## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| SCOTT PONTONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 8842-VCP |
| | ) | |
| MILSO INDUSTRIES CORPORATION | ) | |
| and THE YORK GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION

Submitted: April 2, 2014
Decided: August 22, 2014

Philip A. Rovner, Esq., Jonathan A. Choa, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Valeria Calafiore Healy, Esq., HEALY LLC, New York, New York; *Attorneys for Plaintiff.*

Brian M. Rostocki, Esq., John C. Cordrey, Esq., REED SMITH LLP, Wilmington, Delaware; Steven Cooper, Esq., Danielle J. Marlow, Esq., REED SMITH LLP, New York, New York; *Attorneys for Defendants.*

**PARSONS, Vice Chancellor.**

This is an action by a former officer and director of two Delaware companies for advancement from those companies of the legal fees and expenses he has incurred in underlying litigation between the parties in a federal court in Pennsylvania. Although the Pennsylvania action has been pending since 2010, the complaint only seeks indemnification from January 2013. The Pennsylvania litigation at issue in this case is the same underlying litigation at issue in a related case pending before this Court, *Harry Pontone v. Milso Industries, et al.*, Civil Action No. 7615-VCP. The plaintiff in this case, Harry Pontone's son, claims he is entitled to mandatory advancement from both defendants. The defendants have moved to dismiss the plaintiff's claims, however, for lack of standing. The defendants contend the plaintiff has no standing because he has a right to mandatory advancement and indemnification from his new employer or client, which company has paid the plaintiff's legal fees and expenses through at least the end of 2012 and allegedly has continued to pay them to this day. According to the defendants, because the plaintiff has incurred no out-of-pocket expenses, he has no standing to seek advancement from them. Instead, the defendants contend, his new employer and co-indemnitor's only remedy would be to seek contribution from the defendants at the indemnification stage of these proceedings. The plaintiff opposes the motion to dismiss and insists that he does have standing to pursue his claims for advancement of the fees and expenses he has incurred since January 2013.

For the reasons stated in this Opinion, I grant in part, and deny in part, the defendants' motion to dismiss. Specifically, I grant the motion as to any legal fees and expenses incurred since January 1, 2013 that have been paid by the plaintiff's current

employer or client, on the ground that the plaintiff lacks standing to pursue those claims. I deny the motion to dismiss with respect to any fees and expenses incurred since January 1, 2013 that have not been paid by the co-indemnitor. As to those fees and expenses, the plaintiff is entitled to advancement from at least the one defendant that clearly owes a mandatory advancement and indemnification obligation to the plaintiff.

This matter is also before the Court on the plaintiff's co-pending motion for partial summary judgment. That motion requests an order that the plaintiff is entitled to advancement from the defendants under their bylaws. The defendants oppose this motion on several grounds. For the reasons stated herein and consistent with my ruling on the defendants' motion to dismiss, I grant partial summary judgment of advancement against one of the two defendants as to the unpaid legal fees and expenses, and deny it as to the other, because there are disputed issues of fact as to whether the other defendant's advancement obligation is permissive or mandatory. I also deny summary judgment of advancement as to certain of the numerous counterclaims the plaintiff in this action has asserted in the underlying action. For all but one of the affected counterclaims, I rely on the same rulings and reasoning I articulated in the related action before me involving Harry Pontone. The one additional counterclaim for which I denied advancement is for false and misleading advertising.

Lastly, based on my rulings on the two pending motions, I grant the plaintiff advancement as to 75% of his "fees on fees" in prosecuting this action.

2

# I.    BACKGROUND[1]

## A.    The Parties

Plaintiff, Scott Pontone, is an individual residing in New York.  Defendants are The York Group Inc. ("York"), a Delaware corporation wholly owned by Matthews International Corporation ("Matthews"), and Milso Industries Corporation ("New Milso"), a Delaware corporation wholly owned by York.  York and New Milso are active in the death care industry and, in particular, casket manufacturing.  From July 2005 through May 2007, Scott Pontone served as a director and Executive Vice President for York and New Milso.

## B.    Facts

### 1.    Old Milso is Acquired by Matthews

Until mid-2005, Scott Pontone was the Vice President of Old Milso, a New York regional casket company founded by Scott Pontone's grandparents in the 1930s.  Old Milso was run by Scott Pontone and his father, Harry Pontone.[2]  In early 2005, Matthews, a newcomer to the casket industry, expressed interest in purchasing Old Milso.  Among other things, Matthews sought to take advantage of Old Milso's established business presence in New York, where Matthews previously had not been active.  The parties

---

[1]    Unless otherwise noted, the facts recited herein are drawn from the well-pled allegations of the Verified Complaint, together with its attached exhibits, and are presumed true for the purposes of Defendants' motion to dismiss.

[2]    Harry Pontone is the plaintiff in a related advancement action before this Court. *Pontone v. Milso Indus. Corp.*, C.A. No. 7615-VCP (Del. Ch.).

reached a deal after Matthews promised that, following the acquisition, Scott and Harry Pontone would remain in leadership positions similar to those they had held at Old Milso.

To implement the transaction, Old Milso entered into an Asset Purchase Agreement ("APA") with York and New Milso, a newly formed acquisition subsidiary. The APA reflected, among other things, that Harry and Scott Pontone would become officers and directors of Matthews' new casket business, which was to be run through York and New Milso. Accordingly, Scott and Harry Pontone executed employment agreements with York and New Milso. On July 11, 2005, Scott Pontone became the Executive Vice President of York and New Milso and a director of both companies. Harry Pontone became the President and a director of both companies.

In 2007, Scott and Harry Pontone brought suit to enforce certain of their rights under the employment agreements they entered into with York. The suit resulted in a settlement reached in May 2007. As part of the settlement agreement, Scott Pontone resigned from his positions with York and New Milso. Scott[3] also agreed not to compete with or to solicit the customers of York and New Milso for a period of three years, during which they continued to pay him a salary.

After the expiration of that three-year period, on May 30, 2010, Scott entered into a consulting arrangement with Batesville Casket Company ("Batesville"). Batesville is a

---

[3]     For simplicity and to avoid confusion, this Opinion sometimes uses only the given name of either Scott Pontone or Harry Pontone, as the parties do in their papers. The use of first names does not imply familiarity and intends no disrespect.

leading manufacturer and distributor of caskets in the United States and competes with York and New Milso in the New York region where Old Milso previously conducted business. Pursuant to the consulting arrangement, Scott was to assist Batesville in marketing its products in the New York metropolitan market and in parts of Texas. Scott formalized his relationship with Batesville through a consulting agreement between Batesville and an entity created by Scott, the Pontone Casket Company ("PCC"), of which Scott is the sole owner (the "Consulting Agreement").[4]

## 2. The Pennsylvania Action

On August 16, 2010, York and New Milso, along with their corporate parent Matthews, instituted an action against Scott Pontone and Batesville in the United States District Court for the Western District of Pennsylvania (the "Pennsylvania Action"),[5] challenging the propriety of their consulting arrangement. On February 28, 2011, the plaintiffs in the Pennsylvania Action (the "Pennsylvania Plaintiffs") filed an amended complaint, joining Harry Pontone and PCC as defendants.

The central allegation of the Pennsylvania Plaintiffs is that Scott and the other defendants in the Pennsylvania Action engaged in a wrongful scheme to induce several of

---

[4] Opening Br. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Opening Br.") Ex. 2. The Consulting Agreement was expressly referenced in the Complaint. Moreover, Plaintiffs have waived any objection to the Court's consideration of the exhibits attached to Defendants' Opening Brief in ruling on this motion to dismiss. *See* Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Answering Br.") 26-27. I therefore consider the Consulting Agreement to be properly before me on Defendants' motion to dismiss.

[5] *See York Gp., Inc. v. Pontone*, 2014 WL 896632 (W.D. Pa. Mar. 6, 2014); *York Gp., Inc. v. Pontone*, 2012 WL 3127141 (W.D. Pa. July 31, 2012).

5

the Pennsylvania Plaintiffs' employees and many of their most lucrative customers to move to Batesville. As to Scott, the amended complaint in the Pennsylvania Action alleges that he, in his capacity as Executive Vice President, played a central role in the operations of York and New Milso and had "continuous and unrestricted access to highly proprietary confidential information and trade secrets" concerning their business and customers.[6] The Pennsylvania Plaintiffs allege that Scott misappropriated their confidential information and trade secrets by using them to help Batesville solicit the Pennsylvania Plaintiffs' employees and customers in his role as Batesville's consultant. The Pennsylvania Plaintiffs claim that these actions violated Scott's employment contracts with York and New Milso, which included confidentiality, non-compete, and non-solicitation provisions, as well as the common law.

The Pennsylvania Plaintiffs asserted numerous claims against Scott, including for breach of contract, tortious interference with contract, unfair competition, unjust enrichment, and trademark infringement. In response, Scott asserted a number of counterclaims in the Pennsylvania Action. That action is still pending.

### 3. York and New Milso's Indemnification and Advancement Bylaws

York and New Milso each have bylaws addressing indemnification and advancement. New Milso's indemnification and advancement obligations are covered in

---

[6] Compl. Ex. 1 ¶ 40.

Section 2.15 of its bylaws.[7] Section 2.15(a) of the New Milso bylaws, entitled "Right to

Indemnification," states in relevant part:

> Except as prohibited by law, every director and officer of
> [New Milso] shall be entitled as of right to be indemnified by
> [New Milso] against all expenses and liability . . . incurred by
> such person in connection with any actual or threatened
> claim, action, suit or proceeding . . . whether brought by or
> against such person or by or in the right of the Corporation or
> otherwise, in which such person may be involved, as a party
> or otherwise, by reason of such person being or having been a
> director or officer of [New Milso] . . . (such claim, action,
> suit, or proceeding hereinafter being referred to as an
> "Action"); provided, however, that no such right to
> indemnification shall exist with respect to an action brought
> by an indemnitee . . . against [New Milso] (an "Indemnitee
> Action") except . . . . [if] the Indemnitee Action is instituted
> under Paragraph (c) of this Section and the indemnitee is
> successful in whole or in part . . . .[8]

Section 2.15(a) defines "expenses" and "liability" as follows: "'expenses' means all

expenses actually and reasonably incurred, including fees and expenses of counsel

selected by an indemnitee; and 'liability' means all liability incurred, including the

amounts of any judgments, excise taxes, fines or penalties and any amounts paid in

settlement."[9]

---

[7] Choa Aff. in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss ("Choa Aff. I") Ex. 1 § 2.15. The bylaws of York and New Milso are "expressly referred to and relied upon in the complaint"; therefore, they are properly subject to the Court's consideration on Defendants' motion to dismiss. *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

[8] Choa Aff. I Ex. 1 § 2.15(a).

[9] *Id.*

Section 2.15(b) of the bylaws of New Milso, entitled "Right to Advancement of Expenses," provides:

> Every indemnitee shall be entitled as of right to have the expenses of the indemnitee in defending any Action or in bringing and pursuing any Indemnitee Action under Paragraph (c) of this Section paid in advance by [New Milso] prior to final disposition of the Action or Indemnitee Action, provided that the Corporation receives a written undertaking by or on behalf of the indemnitee to repay the amount advanced if it should ultimately be determined that the indemnitee is not entitled to be indemnified for the expenses.[10]

Bylaw Section 2.15(c), entitled "Right of Indemnitee to Bring Action," states:

> If a written claim for indemnification under Paragraph (a) of this Section or for advancement of expenses under Paragraph (b) of this Section is not paid in full by [New Milso] within 30 days after the claim has been received by [New Milso], the indemnitee may at any time thereafter bring an Indemnitee Action to recover the unpaid amount of the claim and, if successful in whole or in part, the indemnitee shall also be entitled to be paid the expense of bringing and pursuing such Indemnitee Action.[11]

York's indemnification and advancement obligations are addressed in Article VII of its bylaws.[12] The preamble to Article VII states that "[York] shall indemnify and advance expenses under this Article VII to the fullest extent permitted by applicable law

---

[10] *Id.* § 2.15(b).

[11] *Id.* § 2.15(c).

[12] Choa Aff. I Ex. 2 art. VII.

8

in effect on the date of adoption of these Bylaws and to such greater extent as applicable law may thereafter permit."[13]

Section 2 of Article VII of York's bylaws, entitled "Obligation to Indemnify in Actions, Suits or Proceedings by or in the Right of the Corporation" provides in relevant part:

> [York] shall indemnify any person who was or is a party to any threatened, pending, or completed action or suit by or in the right of [York] to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of [York] . . . except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to [York.][14]

Section 7 of Article VII, entitled "Expenses Payable in Advance," states:

> Expenses incurred in defending or investigating a threatened or pending action, suit or proceeding may be paid by [York] in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director, officer, employee or agent to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by [York] as authorized in this Article VII.[15]

### 4. Scott Pontone Requests Advancement from York and New Milso

On January 17, 2013, in the related advancement proceeding brought by Harry Pontone against York and New Milso, this Court granted partial summary judgment in favor of Harry, upholding his right to receive advancement from New Milso for expenses

---

[13]   *Id.*

[14]   *Id.* § 2.

[15]   *Id.* § 7.

incurred in defending the Pennsylvania Action.[16] Subsequently, Scott Pontone elected to seek advancement from New Milso and York for the legal fees and expenses he had incurred in the Pennsylvania Action since January 2013. Before Scott submitted a request for advancement to New Milso and York, however, he executed a loan agreement with Batesville on April 7, 2013 (the "Loan Agreement").[17] Pursuant to that agreement, Batesville agreed to provide Scott with funds to pay his legal fees and expenses in the Pennsylvania Action and in an advancement proceeding against York or New Milso before this Court, subject to various terms discussed in greater detail *infra*.

On July 24, 2013, Scott, by counsel, wrote to Defendants York and New Milso to demand advancement for the attorneys' fees and expenses he had incurred in connection with the Pennsylvania Action from January 2013 through June 2013. Scott's counsel's letter also provided an undertaking guaranteeing his repayment of funds advanced should he ultimately be deemed ineligible for indemnification. On August 23, 2012, Defendants, by counsel, responded that they regarded the facts relevant to Scott's claim for advancement as "fundamentally different" from those relevant to his father's claim.[18] Nonetheless, for the stated purpose of avoiding further litigation costs, New Milso expressed its intent to grant Scott's advancement request to the extent it determined that

---

[16]      *Pontone v. Milso Indus. Corp.*, C.A. No. 7615-VCP, at 52-79 (Del. Ch. Jan. 17, 2013) (TRANSCRIPT). The Court found York's bylaws ambiguous as to whether they provided for mandatory or permissive advancement. *Id.* at 61-63. The Court denied, therefore, summary judgment as to Harry Pontone's entitlement to advancement from York. *Id.*

[17]      Compl. Ex. 2.

[18]      Defs.' Opening Br. Ex. G.

the requested "categories of fees and expenses are permissible under Delaware law, are reasonable, and are reasonably necessary in defense of the claims asserted against Scott."[19] York declined to pay any advancement.

Dissatisfied with the responses of New Milso and York to his advancement requests, Scott commenced this advancement proceeding against New Milso and York on August 26, 2013. Since then, Defendants have moved to dismiss, arguing primarily that Scott lacks standing to pursue advancement from them because he is entitled to and has been receiving mandatory advancement from Batesville, and ultimately will be entitled to indemnification by Batesville, under the terms of the Consulting Agreement and the Loan Agreement. I therefore consider it helpful to review the relevant terms of those agreements.

### 5. The Consulting and Loan Agreements

Both the Consulting Agreement and the Loan Agreement include terms that are relevant to Scott's ability to obtain funding from Batesville to pay for his litigation expenses. Paragraph 17 of the Consulting Agreement, entitled "Indemnification," provides in relevant part:

> [Batesville] agrees to indemnify, defend and hold harmless [PCC], its owners, agents, employees (including [Scott] Pontone and Wynn) and assigns, against any and all third party claims, damages, losses, liability, expenses and costs (including reasonable attorneys' fees) that may be incurred by or asserted against [PCC] or any such owner, agent, employee or assign on account of or arising out of this Agreement, including the provision of Services hereunder, except only to

---

[19] *Id.*

11

the extent any such claim, damages, losses, liability, expenses, or costs are found by a court in a final, non appealable order to have resulted from unauthorized representations or contractual commitments made by [PCC] to third parties or from [PCC]'s negligence or willful misconduct.[20]

The relevant obligations of Scott and Batesville under the Loan Agreement are governed by a number of provisions in that agreement. The stated purpose of the Loan Agreement, as expressed in its recitals, is to provide for a loan from Batesville to Scott (the "Loan") of all funds necessary for Scott "to pay all fees, expenses, and costs previously incurred and to be incurred" by him and PCC in the Pennsylvania Action and by him in this advancement proceeding ("Qualifying Expenses").[21] The Loan consists of an initial loan advance and subsequent loan advances that Scott may request from Batesville. Section 2(a) of the Loan Agreement provides in relevant part:

> On the date hereof [April 7, 2013] . . . [Batesville] shall make a Loan Advance to [Scott Pontone] in the amount of $388,535.81 (the 'Initial Loan Advance'). The Initial Loan Advance represents the unpaid balance of fees and expenses incurred through January 31, 2013 by [Scott Pontone], plus a $15,000 retainer payable to Delaware counsel retained by [Scott Pontone] to act as local counsel in connection with the Advancement Proceeding.[22]

---

[20]     Defs.' Opening Br. Ex. B ¶ 17.

[21]     Compl. Ex. 2.

[22]     *Id.* § 2(a).

And Section 2(b) provides: "From time to time hereafter, within 30 days after each written request therefor by [Scott], [Batesville] shall make additional Loan Advances to Borrower, to fund Qualifying Expenses invoiced after the date hereof."[23]

Section 3 of the Loan Agreement requires Scott to use any surplus advancement obtained from York or New Milso to repay the Loan. That section provides:

> If and to the extent any of the [Pennsylvania Plaintiffs] actually pay any monies to [Scott] that are claimed by [him] in the Advancement Proceeding (each an "Advancement Payment"), [Scott] shall make a repayment of a portion of the unpaid balance of the Loan equal to the amount (if any) of the Advancement Payment that remains after [Scott] has paid all outstanding invoices in respect of Qualifying Expenses.[24]

On the other hand, if Scott is ultimately required to repay any Advancement Payment (or portion thereof) to any of the Pennsylvania Plaintiffs, Section 4 of the Loan Agreement requires Batesville to make an additional loan advance to Scott Pontone to cover the amount of that advancement repayment.[25]

Section 5 addresses forgiveness of the Loan by Batesville. That section provides:

> Except as provided in Section 6, the entire unpaid balance of the Loan shall be deemed forgiven by [Batesville], and automatically shall be extinguished and cease to be an obligation of [Scott Pontone], upon the occurrence of either of the following contingencies: (a) a dismissal with prejudice of the claims against [Scott] and [PCC] in the [Pennsylvania] Litigation; or (b) entry of final judgment in the

---

[23]    *Id.* § 2(b).

[24]    *Id.* § 3.

[25]    *Id.* § 4.

13

[Pennsylvania] Litigation that has become subject to no further appeal.[26]

Section 6, entitled "Repayment Obligation Contingent Upon Counterclaim," provides in relevant part:

> [I]n the event that [Scott Pontone] and/or PCC prevail on any counterclaim, after final judgment and expiration of any appeals . . . , [Scott] and/or PCC shall repay to [Batesville] any prior defense fees paid by [Batesville] up to the amount of any remaining counterclaim recovery minus any costs incurred by [Scott] or PCC to the extent not previously paid by [Batesville].
>
> It is the intent of the parties that the aggregate amount of all repayments required of [Scott] under this Section 6 will not cause [him] to incur any net financial cost in respect of the [Pennsylvania] Litigation and the Advancement Proceeding (taking into account (i) all payments required to be made to any Plaintiffs in the [Pennsylvania] Litigation by [Scott] on account of fees, costs, damages or otherwise, and (ii) all amounts actually received by [Scott] as damages or indemnification awards).[27]

Section 12 of the Loan Agreement specifies that, "[e]xcept as effected herein, this Agreement does not otherwise modify the Consulting Agreement or any other agreements between [Scott Pontone], [Batesville] and [PCC], which remain in effect, including terms therein addressing indemnity."[28]

---

[26]     *Id.* § 5.

[27]     *Id.* § 6.

[28]     *Id.* § 12.

14

## C.    Procedural History

On August 23, 2013, Scott Pontone filed his Verified Complaint (the "Complaint") against Defendants, York and New Milso.  In his Complaint, Scott seeks advancement of the legal fees and expenses that he has incurred in connection with the Pennsylvania Action since January 2013 and that he continues to incur.  On September 24, 2013, Defendants moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) on the grounds that Scott lacks standing to pursue his advancement claims.  After filing his opposition to Defendants' motion to dismiss on December 6, 2013, Scott Pontone moved for partial summary judgment on December 16 on the issue of his entitlement to advancement from Defendants.  After full briefing on Defendants' motion to dismiss and Scott's motion for partial summary judgment, I heard argument on both motions on April 2, 2014.  This Opinion constitutes my rulings on Defendants' motion to dismiss and Plaintiff's motion for partial summary judgment.  I address the motions in that order.

## II.    Defendants' Motion to Dismiss

### A.    Parties' Contentions

Defendants contend that Scott Pontone lacks standing to assert his advancement claims because Batesville is obligated to and has been advancing Scott's fees and expenses in connection with the Pennsylvania Action, pursuant to the terms of the Consulting Agreement and the Loan Agreement.  In that regard, Defendants assert that the Loan Agreement is not a *bona fide* loan agreement and is, instead, a disguised mandatory advancement and indemnification agreement.  Because, according to

15

Defendants, Scott has been and will continue receiving mandatory advancement from Batesville, and ultimately will be indemnified by Batesville, Defendants argue that Scott cannot demonstrate that he has suffered or stands to suffer any out-of-pocket expenses. Defendants further aver that the existence of such out-of-pocket expenses is a prerequisite under Delaware law for him to have standing to assert his advancement claims. Moreover, in light of Scott's receipt of advancement from Batesville, Defendants claim that any payment of advancement from them would result in an improper double payment to Scott for the same set of fees and expenses.

Scott does not concede that all of his litigation costs and expenses have been paid by Batesville and maintains that any amounts he has received from Batesville under the Loan Agreement are, in fact, in the nature of a loan. Nonetheless, Scott argues that, even if Defendants were correct that he is entitled to and has been receiving mandatory advancement of his litigation costs and expenses from Batesville, and ultimately will be entitled to be indemnified by Batesville for those costs and expenses, that fact would not deprive him of standing to seek advancement from the Defendants. In that regard, Scott notes that Defendants' bylaws do not condition advancement on "out-of-pocket" payments and are expressly non-exclusive of his other advancement and indemnification rights. He also claims that, under Delaware law, he has standing to seek advancement for any legal expenses for which he is or will be liable, regardless of whether he has paid those expenses himself or previously collected advancement from another source. Moreover, Scott contends that there is no risk of him receiving double payment for the same set of expenses, because if any funds advanced to him by Defendants exceed the

16

amount of his outstanding unpaid expenses, he is required, under the Loan Agreement, to use the excess amount to repay the Loan from Batesville.

## B. Legal Standard

Defendants' motion to dismiss is governed by Court of Chancery Rule 12(b)(6).[29] For purposes of a motion to dismiss under Rule 12(b)(6), the Court will "assume the truthfulness of the well-pled allegations of the complaint"[30] and afford the plaintiff "the benefit of all reasonable inferences."[31] If the well-pled allegations in the complaint would entitle the plaintiff to relief under any "reasonably conceivable" set of circumstances, the Court must deny the motion to dismiss.[32] The Court, however, need not "accept conclusory allegations unsupported by specific facts."[33] Moreover, failure to plead an element of a claim precludes entitlement to relief and, therefore, is grounds to

---

[29] *See Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1285 (Del. 2007) ("[W]here a party is not arguing that the court lacks the authority to grant the relief requested to any plaintiff (*i.e.*, lacks subject matter jurisdiction), but rather is arguing that the court cannot grant relief to these particular plaintiffs, the motion is more properly decided under Rule 12(b)(6) because the plaintiff has failed to plead a necessary element of a cognizable claim, not because the court does not have jurisdiction.")

[30] *Superwire.com, Inc. v. Hampton*, 805 A.2d 904, 908 (Del. Ch. 2002) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)).

[31] *Id.* (quoting *In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991)) (internal quotation marks omitted).

[32] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011); *see also Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 813 n.12 (Del. 2013).

[33] *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

dismiss that claim.[34] Nonetheless, the Court must "accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim."[35] Generally, on a motion to dismiss under Rule 12(b)(6), the Court will consider only the complaint and the documents integral to or incorporated by reference into it.[36]

Defendants' motion to dismiss turns on the question of standing. "The term 'standing' refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or to redress a grievance. Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers."[37] "Unlike the federal courts, where standing may be subject to stated constitutional limits, state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.'"[38] To establish standing, a plaintiff or petitioner generally must demonstrate: (1) that he or she suffered an injury-in-fact (*i.e.*, an invasion of a legally protected interest), (2) caused by the

---

[34] *See Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 972 (Del. Ch. 2000) (Steele, V.C., by designation).

[35] *Central Mortg.*, 27 A.3d at 535.

[36] *See Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013).

[37] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (citing *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991)).

[38] *Stuart Kingston, Inc.*, 596 A.2d at 1382 (citing *Crescent Park Tenants Assoc. v. Realty Equities Corp. of New York*, 275 A.2d 433, 437-38 (N.J. 1971)).

complained of conduct of the defendant, and (3) that could be redressed by a favorable decision by the Court.[39]

Defendants appear to challenge Scott Pontone's standing on the ground that he cannot demonstrate an injury-in-fact, because he cannot show that he has or will suffer any out-of-pocket expenses due to his mandatory advancement and indemnification rights from Batesville. To determine whether Scott has standing, I first consider a factual premise of Defendants' argument, namely, that Scott is entitled to mandatory advancement and indemnification from Batesville under the Consulting Agreement and the Loan Agreement. Based on the record before me, even if it were limited to the allegations in the Complaint and the terms of the Consulting Agreement, there does not appear to be any dispute that the indemnification provisions in the Consulting Agreement are mandatory. I therefore find that to be true. The Loan Agreement applies to the time period in and after January 2013. Based on my review of the Loan Agreement and the arguments presented on the motion to dismiss, I conclude that the Loan Agreement effectively provides Scott with mandatory rights to advancement.

I must then consider whether it is reasonably conceivable that Defendants' bylaws provide Scott with a right to advancement of his costs and expenses in the Pennsylvania Action, notwithstanding his mandatory advancement and indemnification rights from Batesville. I find that such an interpretation is reasonably conceivable. Finally, I address

---

[39] *See Dover Historical Soc'y,* 838 A.2d at 1110-11 (citing *Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000)).

whether, under Delaware law, Scott is the proper party-in-interest with standing to assert his advancement claims against Defendants. I conclude that he is.

### 1. Scott Pontone's advancement and indemnification rights from Batesville

I agree with Defendants that Scott Pontone's rights under the Loan Agreement and the Consulting Agreement approximate rights of mandatory advancement and indemnification for his litigation expenses incurred in connection with the Pennsylvania Action. As for Scott's advancement rights from Batesville, the Loan Agreement provides that "within 30 days after each written request therefor by [Scott], [Batesville] *shall make* additional Loan Advances to Borrower, to fund Qualifying Expenses invoiced after the date hereof."[40] "Qualifying expenses" include "all fees, expenses, and costs previously incurred and to be incurred" in the Pennsylvania Action and in this action.[41] The implication of these provisions is that Scott is contractually entitled to request and receive funding from Batesville for his litigation costs incurred in connection with the Pennsylvania Action, which amounts to a mandatory advancement right.

Scott also appears to have indemnification rights from Batesville under the terms of the Loan Agreement and the Consulting Agreement. Under the Loan Agreement, all amounts lent to Pontone for his Qualifying Expenses are forgiven upon either: "(a) a dismissal with prejudice of the claims against [Scott] and [PCC] in the [Pennsylvania] Litigation; or (b) entry of final judgment in the [Pennsylvania] Litigation that has become

---

[40]     Compl. Ex. 2 § 2(b) (emphasis added).

[41]     Compl. Ex. 2.

20

subject to no further appeal."[42]  As dismissal or a final judgment in the Pennsylvania Action is likely inevitable, and there is no requirement that the final judgment in the Pennsylvania Action be favorable to Pontone for the Loan to be forgiven, forgiveness of the Loan would appear to be guaranteed.  In light of the inevitable Loan forgiveness, there seem to be only two circumstances under which Scott might be required to repay any portion of the Loan, each of which is specifically provided for under the Loan Agreement.  Before the Loan is forgiven, Scott is required to repay the Loan to the extent that he obtains advancement from Defendants, in excess of his outstanding Qualifying Expenses.[43]  After the Loan is forgiven, Scott is still liable to repay Batesville to the extent that he succeeds on his counterclaims in the Pennsylvania Action and has money left over after paying all of his remaining litigation costs and expenses.[44]  Apart from these two exceptions, Scott appears to be effectively indemnified for any Qualifying Expenses for which he receives funding under the Loan Agreement.

Moreover, Scott's rights under the Loan Agreement are without prejudice to his rights under the Consulting Agreement, which also provides him with indemnification. Specifically, under that agreement, Batesville "agrees to indemnify, defend and hold harmless" Scott "against any and all third party claims, damages, losses, liability, expenses and costs (including reasonable attorneys' fees) that may be incurred by or

---

[42]  *Id.* § 5.

[43]  *Id.* § 3.

[44]  *Id.* § 6.

21

asserted against [him] . . . on account of or arising out of this Agreement."[45]  As Scott is being sued in the Pennsylvania Action principally due to the actions he took working as a consultant for Batesville, his litigation expenses in that action would appear to fall within the scope of the indemnified expenses under the Consulting Agreement.

The Loan Agreement and the Consulting Agreement, therefore, appear to provide Scott with the functional equivalent of mandatory advancement and indemnification rights from Batesville as to his litigation costs and expenses in the Pennsylvania Action. Thus, in analyzing Defendants' motion to dismiss, I proceed on the premise that Scott has mandatory advancement and indemnification rights from Batesville under the terms of the Loan Agreement and the Consulting Agreement.

Based on the allegations in the Complaint and the documentary evidence referred to by the parties without objection, I also find that the only reasonable inference supported by the record on the Motion to Dismiss is that Scott has not paid any out-of-pocket expenses in connection with the Pennsylvania Action since January 2013. Scott is liable for out-of-pocket expenses, however, for any unpaid invoices from his legal counsel in the past few months and for any unbilled time and expenses. In this regard, I also note that the Complaint alleges that Batesville has agreed to provide Scott Pontone with funds under the Loan Agreement "to cover his legal fees and expenses that are the subject of Scott Pontone's request for advancement and indemnification with the

---

[45]    Def.'s Opening Br. Ex. B ¶ 17.

22

understanding that Scott Pontone would seek advancement and eventually indemnification from Defendants and repay any resulting amounts to Batesville."[46]

### 2. Notwithstanding his rights from Batesville, Pontone has a contractual right to mandatory advancement from Defendants

For purposes of their motion to dismiss, Defendants do not dispute that New Milso's bylaws provide for mandatory advancement or that Scott would be entitled to receive advancement from them for at least some of his litigation costs in the Pennsylvania Action, if he were not already collecting advancement from another source. Defendants argue, however, that because Scott currently is receiving and is entitled to continue receiving advancement from another source, namely, Batesville, he cannot demonstrate that he has or will suffer any out-of-pocket expenses and has no right to collect advancement from Defendants under their bylaws. Scott disputes Defendants' contention and asserts that their bylaws do not impose an "out-of-pocket" expense requirement and are expressly non-exclusive. Despite Batesville's payment of his past litigation expenses under the Loan Agreement, therefore, Scott asserts that he has a right under Defendants' bylaws to collect advancement from them for the litigation expenses in the Pennsylvania Action since January 2013 that he seeks to recoup.

I have reviewed Defendants' bylaws and considered the arguments of both sides. Based on that review, I conclude that at least the bylaws of Defendant New Milso[47]

---

[46] Compl. ¶ 46.

[47] As discussed *infra* with respect to Plaintiff's Motion for Partial Summary Judgment, Defendants do not concede, and the record at this point is not sufficiently clear, that the advancement rights contained in York's bylaws are

23

entitle Scott Pontone to advancement for, at a minimum, any of his outstanding legal expenses incurred in the Pennsylvania Action since January 2013 for which he has not yet requested or received funding from Batesville under the Loan Agreement, and for the future costs and expenses that he presumably will incur in that action.

At the outset, I note that bylaws entitling the directors of a Delaware corporation to advancement are adopted under the auspices of Section 145(e) of the Delaware General Corporation Law (the "DGCL").[48] That section authorizes advancement of the expenses a director incurs in defending an action so long as the director undertakes "to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation."[49] It further provides that "such expenses . . . may be so paid upon such terms and conditions . . . as the corporation deems appropriate."[50]

As this Court has held, "[w]hen a corporation agrees to make mandatory the permissive authority to provide advancement and indemnification conferred by Sections 145(a), (b), and (e) of the General Corporation Law, the corporation confers a contractual

---

*mandatory*, rather than permissive. For purposes of this section concerning Defendants' Motion to Dismiss, I need not decide whether the York advancement right is mandatory, because it is sufficient to find, as I do, that the New Milso bylaw provides a mandatory right of advancement. Moreover, I am convinced that it is at least reasonably conceivable that the York bylaws also provide for mandatory advancement.

[48]   8 *Del. C.* § 145(e).

[49]   *Id.*

[50]   *Id.*

fee-shifting right on the covered person."[51]  The scope of Scott Pontone's contractual right to advancement from Defendants is properly determined, in the first instance, by reference to the language of the relevant bylaws.[52]

York and New Milso's bylaws provide, respectively, that covered individuals are entitled to obtain advancement for "[e]xpenses incurred" and for "expenses actually and reasonable incurred" in a qualifying action.[53]  Although neither set of bylaws defines the term "incur," accepted meanings of that term include "to become liable and subject to"[54] and "[t]o suffer or bring on oneself (a liability or expense)."[55]  Thus, a party incurs an expense once he becomes liable for that expense.

Scott Pontone is, at a minimum, liable for any outstanding legal expenses incurred in the Pennsylvania Action since January 2013 for which he has not yet requested or

---

[51]  *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 996 (Del. Ch. 2012).

[52]  *See Schoon v. Troy Corp.*, 948 A.2d 1157, 1165 (Del. Ch. 2008).

[53]  Choa Aff. I Ex. 1 (New Milso's bylaws) § 2.15(b) ("Every indemnitee shall be entitled as of right to have the expenses of the indemnitee . . . paid in advance . . . ."), § 2.15(a) ("[E]xpenses means all expenses actually and reasonably incurred"); *id.* Ex. 2 (York's bylaws) art. VII preamble ("The Corporation shall indemnify and advance expenses"), art. VII § 7 ("Expenses incurred . . . may be paid by the Corporation in advance").

[54]  *Agere Sys., Inc. v. Worthington Steel Co.*, 2013 WL 4958220 (Del. Super. Sept. 12, 2013), *aff'd*, 89 A.3d 478 (Del. 2014) (quoting *Webster's New Collegiate Dictionary* (9th ed. 1983)).

[55]  *Ameristar Casinos, Inc. v. Resorts Int'l Hldgs., LLC*, 2010 WL 1875631, at *9 (Del. Ch. May 11, 2010) (quoting *Black's Law Dictionary* 341 (2d Pocket ed. 2001)).

25

received funding from Batesville under the Loan Agreement.[56] If, for example, at the time of this ruling, Scott's counsel in the Pennsylvania Action had performed 100 hours of work for which they had not yet been paid, Scott would be liable for paying for those legal services. The fact that Scott had not yet paid for those services out-of-pocket, and potentially could request funding for those expenses under the Loan Agreement, would not change the fact of his present liability.[57] He therefore properly could be said to have incurred those expenses and to have a right to advancement for those expenses from (at least) New Milso under the terms of its bylaws. Scott similarly would have a right to advancement from New Milso, under its bylaws, for his future legal expenses in connection with the Pennsylvania Action as they were incurred, assuming that he does not first obtain advancement for those expenses from Batesville.

The mere fact that Scott has a contractual right to request and receive advancement from Batesville, and has received advancement from Batesville in the past, does not undermine his independent contractual rights to advancement under the bylaws of York and New Milso. Had Defendants so desired, their bylaws could have stated that York and New Milso will provide advancement only to the extent that covered

---

[56]  For purposes of Defendants' Motion to Dismiss, I need not reach the issue of whether Scott Pontone can be said to have "incurred" expenses as to attorneys' fees, for example, for which he already has obtained advancement from Batesville.

[57]  *Agere Sys., Inc.*, 2013 WL 4958220, at *9 (holding that the defendant's argument that "costs are 'incurred' only when a party pays costs out-of-pocket is incorrect and erroneous").

individuals are unable to obtain advancement from other sources.[58] The bylaws do not contain such a provision, however. Rather, York and New Milso's bylaws provide indemnification and advancement rights that are expressly non-exclusive of any other rights to advancement and indemnification a covered individual may have.

In that regard, Section 2.15(e) of New Milso's bylaws, entitled "Non-Exclusivity; Nature and Extent of Rights," provides: "[t]he rights to indemnification and advancement of expenses provided for in this Section shall (i) not be deemed exclusive of any other rights, whether now existing or hereafter created, to which any indemnitee may be entitled under any agreement . . . or otherwise."[59] And, Section 8 of Article VII of York's bylaws provides: "[t]he indemnification and advancement of expenses provided by, or granted pursuant to, the other sections of this Article VII shall not be deemed exclusive of any other rights to which those seeking indemnification and advancement of expenses may be entitled under any Bylaw, agreement, contract . . . or otherwise."[60] These provisions indicate that Defendants intended the advancement rights conferred by their bylaws to be broadly available to covered individuals, notwithstanding any similar rights a covered individual might have from other sources.

---

[58] *See, e.g., DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *7, *15 (Del. Ch. Jan. 23, 2006) (applying contract provision providing "to the extent that any Indemnified Person may be entitled to indemnification with respect to any Loss, such Indemnified Person first shall be required to seek indemnification and/or insurance benefits from the Target Company before seeking indemnification from the Company pursuant to this Section 4.4.")

[59] Choa Aff. I Ex. 1 § 2.15(e).

[60] Choa Aff. I Ex. 2 art. VII § 8.

For the foregoing reasons, I conclude that, based on the terms of New Milso's bylaws, Scott Pontone has a contractual right to advancement for, at a minimum, any of his outstanding legal expenses incurred in the Pennsylvania Action since January 2013 for which he has not yet requested or received funding from Batesville under the Loan Agreement, and for the future costs and expenses that he will incur in that action. I also conclude that Scott had a contractual right to advancement from New Milso for his outstanding legal expenses incurred in the Pennsylvania Action from January 1, 2013 and even earlier. To the extent those legal expenses have been paid by Batesville, however, Defendants assert that Scott has not suffered any out-of-pocket loss and, therefore, has no standing to maintain an advancement claim against either York or New Milso for such expenses. Because the arguments as to expenses that admittedly have been paid by Batesville and those that have not been paid or requested yet are different, I analyze those two time periods separately in this Opinion.

In this vein, I pause briefly to address a concern Defendants repeatedly expressed in the briefing on their Motion to Dismiss and reiterated at oral argument[61] that if the Court were to award advancement to Scott, he would be receiving a double payment. Defendants asserted at argument, for example, that: "if we are ordered to now pay [Scott] Pontone, he will recover twice. What he will do with the money I do not know, but this

---

[61] Defs.' Opening Br. 2 ("Put simply, a plaintiff cannot seek to be paid twice for the same fees and expenses."); Defs.' Reply Br. 1 ("Delaware law therefore precludes the double recovery Scott Pontone seeks."); *Id.* at 9 n. 6 (In the context of subrogated claims brought by insurers, "there is no double recovery."); *Id.* at 15 n. 10 ("Similarly here, Scott Pontone has shown no such intent on the part of Defendants . . . to allow multiple recoveries by him.").

28

will be a second payment."[62]  This argument is a red herring.  If Scott has received an invoice from his counsel that he either has not submitted to Batesville or which Batesville has not paid, there would be no double payment.  As to the legal fees and expenses Scott incurred before January 1, 2013, he is not seeking advancement from York or New Milso.  Once again, therefore, there is no risk of a double payment or recovery.  Finally, for fees and expenses Scott incurred after January 1, 2013 that have been paid by Batesville, and conceivably might give rise to a double payment or recovery, I have determined for the reasons discussed in Section II.B.3.b *infra* that Scott has failed to allege sufficient facts to support a reasonable inference that he has standing to enable him to pursue those claims in his own right. [63]

### 3.  Scott Pontone's standing to seek advancement from Defendants

#### a.  The relevant case law and the Parties' contentions

Defendants argue that, whatever advancement rights Scott Pontone may have under their bylaws, under Delaware law, he lacks standing to pursue the claims he has asserted in this litigation and is not the proper party in interest to assert those rights.  Defendants argue that this is so because he is not at risk of suffering any loss if the advancement he requests from them is denied, due to the mandatory advancement and indemnification he will receive from Batesville.  In support of their argument, Defendants

---

[62]  Tr. 57.

[63]  I note, however, that even in this third circumstance, it is unlikely that there would be a double payment, because of the requirement in Section 3 of the Loan Agreement that Scott must use any surplus advancement obtained from New Milso or York to repay the Loan.  *See supra* note 24 and related text.

29

principally rely upon this Court's decision in *Levy v. HLI Operating Co.*,[64] in which the Court held that parties who had been fully reimbursed for certain expenses by one indemnitor lacked standing to pursue indemnification for the same expenses from a different indemnitor. Scott asserts that this case is distinguishable from *Levy* on numerous grounds, including that *Levy* addressed standing to bring indemnification, not advancement, claims. In that regard, Scott contends that the facts present here are more analogous to those in *Schoon v. Troy Corp.*,[65] in which the court held that a party receiving voluntary advancement from one source had standing to pursue mandatory advancement from another. Because *Levy* and *Schoon* are the most pertinent cases to the standing issue before this Court, those decisions merit more detailed exposition.

The plaintiffs in *Levy* were six former directors of HLI Operating Company, Inc. ("Old Hayes") who had been named as defendants in multiple securities lawsuits relating to restatements of Old Hayes's financial results. The plaintiffs had agreed to pay $1.2 million each to settle certain of those lawsuits, and they subsequently requested indemnification from Old Hayes for those payments pursuant to their indemnification rights under Old Hayes' bylaws and various indemnification agreements. Old Hayes rejected the directors' request, and, in response, they filed suit.

In the course of the litigation, discovery revealed that JLL Fund, a major shareholder of Old Hayes that had appointed four of the plaintiff directors (the "JLL

---

[64] 924 A.2d 210, 214 (Del. Ch. 2007).

[65] 948 A.2d 1157, 1159 (Del. Ch. 2008).

Representatives"), had made the settlement payments for each of the JLL Representatives pursuant to contractual indemnification obligations it owed to them. Based on that information, Old Hayes moved for summary judgment against the JLL Representatives, arguing that they had suffered no injury and therefore lacked standing to bring an indemnification claim. The Court agreed and granted summary judgment in favor of Old Hayes, holding as follows:

> When a purported indemnitee has all of his indemnifiable expenses paid in full and cannot show an out-of-pocket loss, he has no claim for indemnification under section 145. The relevant provisions of that statute empower a corporation to provide indemnification of only those amounts "actually . . . incurred by the person . . . ." This language is best understood as a statutory embodiment of the common law of indemnification, which generally recognizes that a party who "'has not and will not sustain any actual out-of-pocket loss' as the result of a claim raised against it has no indemnification claim . . . ." Therefore, under this reading of section 145, once a co-indemnitor fully reimburses its indemnitee for indemnifiable liabilities, the indemnitee lacks standing to assert an indemnification claim against the other indemnitor in the indemnitee's own right.[66]

The Court further held that, as the real party-in-interest, the indemnitor who fully satisfied its obligation to its indemnitee could sue the co-indemnitor in its own name on a theory of contribution.

*Schoon* was decided shortly after *Levy* by the same Vice Chancellor. In *Schoon*, this Court considered the standing of a party presently receiving advancement from one source to pursue advancement from another. The plaintiffs in *Schoon* were Richard

---

[66] *Levy*, 924 A.2d at 222.

31

Schoon and William Bohnen, a current and former director of the defendant, Troy Corporation ("Troy"). The plaintiffs had been appointed to Troy's board of directors by Steel Investment Company ("Steel"), a major Troy stockholder. In two previously-filed actions, Troy had asserted or attempted to assert breach of fiduciary duty claims against the plaintiffs. In response, the plaintiffs requested advancement from Troy under the terms of its bylaws, which provided for mandatory advancement for directors of all fees and expenses incurred in defending threatened or pending claims. After Troy refused to advance funds to cover all of the claimed fees and expenses, the plaintiffs filed suit against Troy for advancement.

The Court resolved the advancement claims on cross-motions for summary judgment. In its decision, the Court determined that Bohnen, as a former director of Troy, no longer was entitled to advancement under its bylaws due to a bylaw amendment that Troy had adopted. The Court then turned to Schoon's right to advancement. Earlier in the proceedings, the plaintiffs disclosed that Steel had been advancing their expenses in the previously-filed actions and in the instant advancement action. Steel was under no legal obligation to provide advancement to the plaintiffs and was doing so voluntarily, subject to a commitment by them to repay any amounts they received as advancement or indemnification from Troy.

Troy argued that, under *Levy*, Schoon lacked standing to bring his advancement claim because he had not suffered an actual loss. The Court in *Schoon* rejected this argument, noting that the facts before it were distinguishable from those in *Levy* because unlike the JLL Fund in *Levy*, which had a mandatory indemnification obligation to the

32

JLL Representatives in that case, Steel was not obligated to advance Schoon his costs and was doing so voluntarily. The Court found this to be significant for two primary reasons.

First, the Court noted that, in contrast to the JLL Representatives, it was not certain that Schoon "has not and will not sustain any actual out-of-pocket loss," because he "has no assurance that Steel will continue advancing his costs and is obliged to repay those amounts to the extent he recovers them from Troy."[67] The Court thus held that "Schoon has articulated sufficient injury to establish his standing."[68]

Second, the Court found that accepting Troy's arguments would inequitably reward it. In that regard, the Court noted that because Steel voluntarily undertook to pay Schoon's fees and expenses without obligation, it would have no claim for contribution against Troy, because a contribution claim requires a party to "show concurrent obligations existed to the same entities."[69] Thus, the Court observed that "were the court to accept Troy's argument that Schoon also lacks standing, no party could sue Troy. This result would inequitably reward Troy for failing to discharge its advancement obligations. The better approach is to allow Schoon to press his claim."[70]

The *Schoon* Court also cited *DeLucca v. KKAT Management, L.L.C.*[71] in support of its decision that *Schoon* had standing. The plaintiff in *DeLucca* sought to enforce

---

[67]     *Schoon*, 948 A.2d at 1175.

[68]     *Id.*

[69]     *Id.* (quoting *Levy*, 924 A.2d at 220).

[70]     *Schoon*, 948 A.2d at 1175.

[71]     2006 WL 224058 (Del. Ch. Jan. 23, 2006).

mandatory advancement rights against the defendant companies in that action but was receiving advancement from a separate company in the meantime. The defendants argued that, because the plaintiff had not been making any payments directly, she could not demonstrate a loss and, therefore, could not pursue advancement from them. The Court in *DeLucca* disagreed and found that the plaintiff could demonstrate an economic loss because she owned the company that was advancing her costs. The *DeLucca* Court also emphasized, however, that embracing the defendants' argument would provide a "perverse incentive" that would encourage companies to refuse to provide advancement in the hopes that the person owed advancement would "find an affluent aunt, best friend, or other third party to front her defense costs," thereby forfeiting her advancement rights.[72] The Court in *DeLucca* noted that "[t]he incentives for such refusal are already abundant . . . and there is no legal or equitable justification for adding to them . . . ."[73] Thus, the *Schoon* Court found that the policy considerations underlying the Court's decision in *DeLucca* also supported its decision that Schoon had standing to pursue his advancement claims.

Defendants argue that, under *Levy*, Scott Pontone lacks standing to assert an advancement claim against them because he is entitled to mandatory advancement and indemnification from Batesville and, therefore, he "has not and will not sustain any actual

---

[72]     *Id.* at *9.

[73]     *Id.*

34

out-of-pocket loss."[74] They assert that this case does not fit within *Schoon* because the advancement the plaintiff was receiving from a third party there was voluntary, not mandatory. Defendants contend this was "critical" to the Court's determination that the plaintiff had standing. For his part, Scott argues that *Levy* is inapposite because it was an action for indemnification—not advancement—involving claims made after the underlying action had terminated and after all of the former directors' litigation costs had been paid by a third party indemnitor. Rather, Scott maintains that advancement cases such as *Schoon* and *DeLucca* are more analogous to the instant case and support the proposition that a corporate defendant cannot escape its advancement obligations merely because a plaintiff has been receiving advancement from another source, whether on a mandatory or a voluntary basis.

### b. Plaintiff's claims for advancement for expenses incurred from January 2013 to the present that already have been paid

As stated *supra*, there is neither an allegation in the Complaint nor an indication in the documentary evidence referred to by the parties to support a reasonable inference that Scott Pontone has paid or is liable for any out-of-pocket expenses in connection with the Pennsylvania Action, with the exception of only the most recent invoices for legal fees and expenses that remain unpaid and any completed work that has not yet been billed. Such liability for out-of-pocket expenses presumably relates to a fairly recent period, after June 30, 2014, for example. As to the claims for advancement of expenses up to that point, I infer that they have been paid by Batesville already, and I conclude,

---

[74]     Defs.' Opening Br. 20.

35

therefore, that Scott has no standing to assert a claim for indemnification under *Levy*. Extending the reasoning of *Schoon*, I conclude that Scott does not have standing to pursue a claim for advancement of those expenses, either. Because I find that Scott does not have standing with respect to claims for advancement of the expenses that already have been paid, I grant Defendants' motion to dismiss that aspect of Scott's advancement claim, without prejudice to his right to seek leave of Court to amend his Complaint if, in fact, he has suffered out-of-pocket expenses during the time period in question (from January 1, 2013 through June of this year).[75] This dismissal is also without prejudice to any claim that Batesville may have for contribution against New Milso in the indemnification stage of this matter.

### c. Plaintiff's claims for advancement from January 2013 to the present that have not been paid

Having reviewed the relevant case law, I conclude that, under Delaware law, Scott Pontone has standing to pursue, at a minimum, advancement from Defendants for the litigation expenses he has incurred and will incur in the Pennsylvania Action and for which he has not already received advancement from Batesville under the Loan Agreement. In my view, Scott has a contractual right to receive advancement from at least Defendant New Milso for at least those litigation expenses, and Defendants' refusal to honor their obligations in that regard presents an injury-in-fact that gives Scott Pontone

---

[75] If the last period for which Batesville paid Scott Pontone's legal fees and expenses is some other recent date in 2014, I would expect the parties to incorporate that corrected date in an order implementing the rulings in this Opinion.

standing, regardless of his presumed ability to request and receive mandatory advancement and indemnification from another source.

Notwithstanding Defendants' protestations to the contrary, this decision does not conflict with this Court's decision in *Levy*. The Court in *Levy* was determining the plaintiff's standing to pursue an indemnification claim, not an advancement claim. In its analysis, the Court looked to the language of the subsections of 8 Del. C. § 145 that address indemnification, which authorize a corporation to provide indemnification only of amounts "actually . . . incurred by the person."[76] The Court held that this language should be read as incorporating the restriction from the common law of indemnification that a party who "'has not and will not sustain any actual out-of-pocket loss' as the result of a claim raised against it has no indemnification claim."[77] The indemnitee's losses had been paid at the time of the Court's decision in *Levy*.

As an initial matter, it is not apparent to me that the reasoning of *Levy* should be mechanically extended to advancement. A corporation's authority to provide advancement is addressed in its own subsection of Section 145, namely, Section 145(e), that uses distinct language from the subsections addressing indemnification and permits advancement of "expenses incurred."[78] Moreover, as this Court consistently has held, "advancement and indemnification, although obviously related, are 'distinct types of

---

[76]    *Levy*, 924 A.2d at 222 (quoting 8 *Del. C.* § 145(a)-(c)).

[77]    *Id.* (quoting *Perno v. For–Med Med. Gp., P.C.*, 176 Misc.2d 655, 673 N.Y.S.2d 849, 851 (N.Y. Sup. Ct. 1998)).

[78]    8 *Del. C.* § 145(e).

legal rights' and . . . the right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified."[79] To the contrary, "Section 145(e) . . . expressly contemplates that corporations may confer a right to advancement that is greater than the right to indemnification and recognizes that advances must be repaid if it is ultimately determined that the corporate official is not entitled to be indemnified."[80]

Nonetheless, even if the restriction articulated in *Levy* were extended to advancement, it would not bar Scott's standing in this case. The *Levy* Court's determination that plaintiffs had not and *would not* incur any out-of-pocket expense was driven by the fact that they already had been fully reimbursed by a third party for the settlement payment for which they sought to be indemnified by the defendant. Here, Scott seeks advancement for the expenses he has incurred and will continue to incur in the ongoing Pennsylvania Litigation, at least some portion of which has not yet been paid for by Batesville. Defendants' argument as to why Scott nonetheless will not incur any out-of-pocket expenses going forward is that he will be able to request and obtain advancement, and ultimately indemnification, from Batesville for any unpaid present and future expenses.

This argument is unpersuasive. Were the Court to accept Defendants' argument, it would mean that any time a plaintiff held and pursued advancement and indemnification

---

[79]     *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldg. Co.*, 2004 WL 550743, at *2 (Del. Ch. Mar. 10, 2004)

[80]     *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212-13 (Del. 2005).

rights from a party that was willing to honor its obligations, it would lose the ability to enforce any other advancement rights it might have as to other parties, and have to wait until the conclusion of the relevant proceedings for the co-indemnitors to sort out their respective rights. This cannot be the law. The fact that a third party is willing to honor its contractual commitments to the plaintiff if called upon to do so should not serve as a basis for a defendant to escape its own, independent and commensurate, contractual obligations. In other words, an indemnitee having two essentially co-equal sources of advancement and indemnification should have the right to switch from one to the other in the middle of litigation, if he decides to do so. The indemnitee could not recover twice and presumably would have to stop accepting advancement in the first instance from the first indemnitor. Thus, unlike the situation in *Levy*, it would not be a foregone conclusion that he would not have any out-of-pocket expenses. For similar reasons, I also find that this Court's decisions in *Schoon* and *DeLucca* support the conclusion that Scott Pontone has standing to pursue advancement.

This result avoids the "perverse incentive" cautioned against in *Schoon* and *DeLucca.* According to Defendants, once a plaintiff begins to collect advancement from a source that owes him mandatory advancement and indemnification rights, the plaintiff loses standing to pursue advancement from any other source. This creates a perverse incentive for companies to delay paying advancement in the hopes that they will be let off the hook.

Indeed, this case illustrates that possibility to some extent. Because Defendants here vigorously contested Harry Pontone's advancement claims in related litigation in

39

this Court, it is not surprising that Scott initially chose to seek and obtain advancement from Batesville. In January 2013, this Court entered an Opinion that largely granted Harry Pontone's claims for advancement. Promptly thereafter, Scott Pontone attempted to obtain advancement from Defendants rather than his client, Batesville. I see nothing nefarious or suspicious about Scott's conduct. In that regard, I note, for example, that Scott alleges in his Complaint that Batesville's commitment to paying his litigation expenses is negatively impacting his employment relationship. Rather, Scott's decision reflects the economic advantage he enjoys by having at least two separate, mandatory sources of advancement.[81]

In conclusion, in light of the foregoing analysis, Scott Pontone at least has standing to pursue advancement for the qualified expenses for which he has not yet received advancement from Batesville. As to those expenses, dismissal for lack of standing therefore would be inappropriate.

Having concluded that Scott has standing to pursue advancement from Defendants as to the expenses he has and will incur in the Pennsylvania Action for which Batesville

---

[81] For these reasons, I also conclude that Defendants' argument that the doctrine of unclean hands bars Scott Pontone from recovering on his advancement claim is without merit. Apart from their baseless criticism of Scott's decision to seek advancement from Defendants in the middle of their underlying litigation, the only other basis for Defendants' unclean hands argument is that the Loan Agreement is a sham transaction. The Loan Agreement may have been drafted with cases like *Levy* and *Schoon* in mind, but that is understandable because this is a complicated area of the law. The likelihood that the parties to that agreement attempted to remain within the confines of the relevant case law, while also giving effect to Scott's and Batesville's goal of providing Scott with full advancement and indemnification, is simply not the type of behavior that the doctrine of unclean hands seeks to deter.

40

has not yet provided him advancement, I now consider Scott's motion for partial summary judgment as to his entitlement to advancement for those expenses.

### III.      MOTION FOR SUMMARY JUDGMENT

### A.      Legal Standard

Under Delaware law, "[s]ummary judgment is granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[82] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[83] Summary judgment will be denied when the legal question presented needs to be assessed in the "more highly textured factual setting of a trial."[84] The Court also "maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application."[85]

---

[82] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[83] *GMC Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 456 (Del. 2010)); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

[84] *Schick, Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 n.3 (Del. Ch. 1987) (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256–57 (1948)).

[85] *Tunnell v. Stokley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006) (quoting *Cooke v. Oolie*, 2000 WL 710199, at *11 (Del. Ch. May 24, 2000)).

Under Section 145(k) of the DGCL, "[t]he Court of Chancery may summarily determine a corporation's obligation to advance expenses (including attorneys' fees)."[86] Indeed, "summary judgment practice is an efficient and appropriate method to decide" an advancement dispute, "as the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought."[87]

I consider, in turn, Scott Pontone's entitlement to advancement from York and New Milso.

## B. Scott's Entitlement to Advancement From York

Scott asserts that he is entitled to mandatory advancement from York of his fees and expenses in the Pennsylvania Action. York's bylaws authorize advancement, but it is unclear whether they provide for advancement that is mandatory or permissive in nature. The preamble to Article VII of York's bylaws suggests mandatory advancement, stating that "[York] *shall indemnify and advance expenses* under this Article VII to the fullest extent permitted by applicable law in effect on the date of adoption of these Bylaws and to such greater extent as applicable law may thereafter permit."[88] On the other hand, Section 7 of Article VII of York's bylaws, entitled "Expenses Payable in Advance," suggests that advancement is only permissive, stating that:

---

[86] 8 *Del. C.* § 145(k).

[87] *Weinstock v. Lazard Debt Recovery GP, LLC*, 2003 WL 21843254, at *2 (Del. Ch. Aug. 8, 2003) (citing *Reddy v. Elec. Data Sys. Corp*, 2002 WL 1358761, at *3 (Del. Ch. June 18, 2002), *aff'd*, 820 A.2d 371 (Del. 2003)).

[88] Choa Aff. I Ex. 2 art. VII.

> Expenses incurred in defending or investigating a threatened or pending action, suit or proceeding *may be paid by* [York] in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director, officer, employee or agent to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by [York] as authorized in this Article VII.[89]

Scott Pontone asserts that the language in the preamble of Article VII, by its plain terms, establishes conclusively that he has a mandatory advancement right against York, to the fullest extent of the law. Scott also argues that the two relevant bylaw provisions can be read in harmony if the second provision is interpreted as providing for permissive advancement in circumstances beyond those provided for by Delaware law—for example, in instances where a York employee is sued not by reason of his or her official capacity. Furthermore, Scott argues that any perceived ambiguity should be resolved against the drafter, Defendant York, under the doctrine of *contra proferentem*.

York contends that Article VII's preamble cannot be the "final word" on advancement and indemnification, or it would render the remaining sections of that article superfluous. York also notes that Article VII's preamble is a general provision and the twelve sections that follow are more specific. Therefore, under the rule of contract interpretation that specific provisions should prevail over general provisions, York argues that the language in Section 7 is controlling and that its bylaws should be interpreted as providing only for permissive advancement. York further argues that, at a

---

[89] *Id.* § 7.

minimum, its bylaws are ambiguous and their meaning, therefore, cannot be resolved on Scott's motion for summary judgment.

In the related advancement proceeding brought before this Court by Scott's father, Harry Pontone, I considered the interpretation of York's bylaws on a motion for partial summary judgment by Harry. Counsel for the parties raised substantially the same arguments on that motion as they do here as to the proper interpretation of York's bylaws. In an oral ruling on that motion, I found York's bylaws to be ambiguous and declined to grant summary judgment on the issue of Harry's entitlement to advancement from York.[90] In that regard, I stated as follows:

> In this instance I believe that both [parties'] interpretations are reasonable, given the apparent inconsistency in the drafting between the preamble or the lead-in sentence that clearly refers to mandatory advancement, and, then, Section 7, which is written in permissive terms. As I've indicated, it's my preliminary view that Pontone is correct and that this should be a case of mandatory advancement. . . . But I recognize the . . . principle that's been referred to by the defendants, that the more specific provisions generally are to be given preference over the general. There's at least a colorable argument in that regard here. So for purposes of summary judgment, it strikes me that this is not a situation that I should jump to the *contra proferentem* conclusion or application of that principle, but rather it would be one where, if the parties considered it necessary, we could go on to further proceedings. There might be discovery related to this issue.[91]

---

[90]     *Pontone v. Milso Indus. Corp.*, C.A. No. 7615-VCP, at 52-79 (Del. Ch. Jan. 17, 2013) (TRANSCRIPT).

[91]     *Id.* at 62-63.

44

Notwithstanding my prior ruling, Scott Pontone argues that I should reconsider my interpretation of York's bylaws and hold that they provide for mandatory advancement because York has not come forward with any additional evidence to support its proposed interpretation. I reject this argument for two reasons. First, on a motion for partial summary judgment, it is the *moving party's* burden to prove the absence of a genuine issue of material fact, and the court will resolve doubts in the non-movant's favor.[92] Second, Scott has not identified any evidence developed in discovery that would enable the Court to conclude, as a matter of law, that York's bylaws mean what Scott contends they do.

No new evidence or arguments have been presented that cause me to question my previous ruling that York's bylaws are ambiguous as to whether they provide for mandatory or permissive advancement. I therefore reach the same conclusion here. Thus, I hold that there is a genuine issue of material fact that precludes summary judgment as to Scott's entitlement to advancement from York.

### C. Scott's Advancement Claim Against New Milso

By contrast to Scott Pontone's advancement rights under York's bylaws, it is undisputed that Scott, as a former officer and director of New Milso, has mandatory advancement rights under New Milso's bylaws. In that regard, Section 2.15(b) of New Milso's bylaws provides that "[e]very indemnitee shall be entitled as of right to have the

---

[92] *Citizens Coal., Inc. v. Cty. Council of Sussex Cty.*, 773 A.2d 1018, 1022-23 (Del. Ch. 2000) (citing *Brown v. Ocean Drilling & Exploration Co.*, 403 A.2d 1114, 1115 (Del. 1979)).

expenses of the indemnitee in defending any Action . . . paid in advance by [New Milso] prior to final disposition of the Action," subject to the requirement that "[New Milso] receiv[e] a written undertaking by or on behalf of the indemnitee to repay the amount advanced if it should ultimately be determined that the indemnitee is not entitled to be indemnified for the expenses."[93] In Section 2.15(a), "indemnitee" is defined, in relevant part, as "each director and officer of New Milso"; "expenses" are defined as "all expenses actually and reasonably incurred"; and "Action" is defined as "any actual or threatened claim, action, suit or proceeding . . . in which [the indemnitee] may be involved, as a party or otherwise, by reason of such person being or having been a director or officer of [New Milso]."[94]

Scott Pontone asserts that, under Section 2.15(b) of New Milso's bylaws, he is entitled to advancement from New Milso for the fees and expenses he has incurred and will continue to incur in the Pennsylvania Action. New Milso raises two principal arguments as to why the advancement Scott requests is outside the scope of New Milso's obligations. First, New Milso argues that the Pennsylvania Action was not brought against Scott "by reason of" his having been a director or officer of New Milso and, thus, is not a qualifying action for purposes of advancement. Second, New Milso contends that, even if the Pennsylvania Action was brought "by reason of" Scott's former role as an officer and director of New Milso, Scott's counterclaims in that action were not

---

[93] Choa Aff. I Ex. 1 § 2.15(b).

[94] *Id.* § 2.15(a).

46

asserted "in defending" the action and, therefore, at a minimum, the fees and expenses associated with his counterclaims are not eligible for advancement. I address these issues in turn.

### 1. Was the Pennsylvania Action brought "by reason of" Scott Pontone's former role as an officer and director of New Milso?

The "by reason of" limitation in New Milso's advancement bylaws is consistent with the statutory language contained in Section 145(a) of the DGCL, which authorizes indemnification when a person is made or threatened to be made a party to an action or proceeding "by reason of the fact" that the person is or was a director or officer.[95] Under Delaware law, "[t]he 'by reason of the fact' standard, or the 'official capacity' standard, is interpreted broadly and in favor of indemnification and advancement."[96] As the Delaware Supreme Court held in *Homestore, Inc. v. Tafeen*, "if there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct."[97] The requisite connection is established "if the corporate powers were used or necessary for the commission of the alleged misconduct."[98]

---

[95]    8 *Del. C.* §145(a).

[96]    *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *7 (Del. Ch. May 30, 2008) (citing *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163 (Del. Ch. Jan. 30, 2004)).

[97]    888 A.2d 204, 214 (2005).

[98]    *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

In the Harry Pontone advancement proceeding, I concluded that Harry was made a party to the Pennsylvania Action by reason of his former role as an officer and director of Defendants and, therefore, was entitled to advancement from New Milso of his costs and expenses in that action.[99] One factor I relied upon in reaching that conclusion was that the Pennsylvania Plaintiffs asserted a breach of fiduciary duty claim against Harry as well as numerous other claims that were based on his misuse of information obtained in his capacity as an officer and director.

Although both Scott and Harry Pontone served as officers and directors of New Milso and the allegations asserted against Scott by the Pennsylvania Plaintiffs are substantially similar to those asserted against his father, Defendants argue that two key distinctions compel the conclusion that Scott is not a defendant in the Pennsylvania Action "by reason of" his role as a former New Milso officer and director. Those two distinctions are that, unlike Harry Pontone: (1) Scott has not been expressly accused of a breach of fiduciary duty in the Pennsylvania Action; and (2) Scott was not serving as an officer or director at the time of the alleged misconduct. Having re-examined the amended complaint in the Pennsylvania Action, I find that, notwithstanding these distinctions raised by New Milso, Scott was made a party to the Pennsylvania Action "by reason of" his former corporate office.

As to the first distinction, although it is true that the Pennsylvania Plaintiffs have not brought an express count for breach of fiduciary duty against Scott Pontone, the

---

[99] *Pontone v. Milso Indus. Corp.*, C.A. No. 7615-VCP, at 64-72 (Del. Ch. Jan. 17, 2013) (TRANSCRIPT).

claims they have asserted against him—including for breach of contract, tortious interference with contract, unfair competition, unjust enrichment, and trademark infringement—are nonetheless inextricably intertwined with and based on his former role as an officer of New Milso. In that regard, the gravamen of the allegations in the Pennsylvania Complaint is that Scott and Harry Pontone engaged in a wrongful scheme to divert employees and customers away from New Milso and toward Batesville, and that this scheme was facilitated by the confidential proprietary and trade secret information they acquired from serving as directors and officers of New Milso.

In its factual background, the Pennsylvania Complaint emphasizes that Scott played a central and important role in the management and operations of York and New Milso during his time as an officer of those companies. It also states that:

> In their capacities as, respectively, President and Executive Vice-President, Harry and Scott had continuous and unrestricted access to highly proprietary confidential information and trade secrets of Plaintiffs, including, but not limited to: information concerning their past, present and prospective business contacts; past, present and prospective customers; customer lists, including key customer contact information; customer purchasing histories, trends and requirements; sales information; distribution information; information regarding Plaintiffs' marketing strategies and other marketing information; information regarding employees, including the terms of employment and contractual covenants; and information regarding Plaintiffs' internal policies and practices.[100]

In describing the alleged wrongful scheme perpetrated by Scott and Harry Pontone, the Pennsylvania Complaint alleges that "[o]nce Scott . . . joined Batesville, [he]

---

[100]    Compl. Ex. 1 ¶ 40.

49

moved quickly—with Harry's acquiescence and assistance—to use the customer contacts and relationships, and the confidential and proprietary information regarding customer requirements, pricing and discounts that they gained access to while employed by Plaintiffs, to target the largest accounts Harry handled . . . ."[101] The Pennsylvania Plaintiffs' allegation that Scott misappropriated confidential and proprietary information learned during his time as a director and officer underlie nearly all of the claims they assert against him.

For example, in support of their breach of contract claim against Scott, the Pennsylvania Plaintiffs allege that "Scott Pontone breached the confidentiality provisions of the APA (Section 12.1) and his Employment Agreement (Section 4.01) by, *inter alia*, disclosing to Batesville Plaintiffs' customer lists and customer information, trade secrets and other proprietary information."[102] In support of their unfair competition claim against all of the defendants in the Pennsylvania Action, the Pennsylvania Plaintiffs allege that "Defendants' misconduct described above—including, but not limited to, Defendants' misappropriation of Plaintiffs' customer lists, requirements, and other confidential information, [and] Defendants' use thereof to solicit Plaintiffs' customers and employees . . . —constitutes unfair methods of competition."[103] And, in support of their unjust enrichment claim against all defendants, the Pennsylvania Plaintiffs allege that "[a]s a result of the actions of Defendants alleged above, including but not limited to

---

[101]     *Id.* ¶ 120.

[102]     *Id.* ¶ 128.

[103]     *Id.* ¶ 186.

50

their . . . improper misappropriation of Plaintiffs' business relationships, business contacts, and proprietary information, Defendants have profited at the expense of Plaintiffs."[104]

This Court has held previously that where the claims asserted against a defendant in an action are based on the misuse of confidential information that the defendant learned in his or her official corporate capacity, that action qualifies as being asserted "by reason of" that corporate capacity.[105] Based on this analysis, I find that the claims asserted against Scott in the Pennsylvania Action are based largely on his misuse and misappropriation of confidential and proprietary information that he learned in his capacity as an officer or director of New Milso. This is sufficient to support the conclusion that Scott was made a party to the Pennsylvania Action "by reason of" his former role as a New Milso officer or director, even in the absence of a claim against him for breach of fiduciary duty.

---

[104]    *Id.* ¶ 192.

[105]    *Brown v. LiveOps, Inc.*, 903 A.2d 324, 330 (Del. Ch. 2006) (concluding that underlying claims arose "by reason of the fact" that plaintiff was a director or officer of defendant because "[t]he gravamen of the underlying complaint is that [plaintiff] had access to proprietary information by reason of the fact that he was a director and officer of [defendant] and that he wrongly used that information for his personal benefit."); *see also Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *7 (Del. Ch. May 3, 2002) (holding that the relevant inquiry for purposes of the "by reason of" standard "is into whether the [wrongful] scheme is alleged to have employed the corporate powers (or, for example, confidential inside information acquired through the corporate status) conferred upon the officer by virtue of his status").

51

In addition, I note that, although the Pennsylvania Plaintiffs have not asserted an express claim for breach of fiduciary duty against Scott, the complaint contains allegations suggesting that he, in fact, did owe such a duty to the Pennsylvania Plaintiffs and arguably raising an inference that he breached that duty through the wrongful conduct challenged in the complaint. In that regard, the Pennsylvania Complaint asserts that "as with Harry, the fiduciary duty and confidentiality provisions set forth in Section 12.1 of the APA and Sections 1.07 and 4.01 of Scott's Employment Agreement continue indefinitely."[106] The Pennsylvania Complaint further alleges that Section 1.07 of Scott's Employment Agreement imposed on him "a fiduciary duty of loyalty."[107] The Pennsylvania Complaint also asserts that "in addition to his contractual obligations to Plaintiffs, Scott was also subject to certain common law obligations to Plaintiffs, including the duty of loyalty, a fiduciary duty as an officer, and the duty to maintain the confidentiality of Plaintiffs' confidential and proprietary information."[108] These allegations, when coupled with the Pennsylvania Plaintiffs' claims that Scott misused the confidential and proprietary information that he learned as an officer and director for his own benefit and to his unjust enrichment, arguably raise an inference that he breached his fiduciary duties. Particularly in light of these fiduciary allegations in the Pennsylvania Complaint, I reject as hypertechnical and overly formalistic Defendants' argument that

---

[106] Compl. Ex. 1 ¶ 35.

[107] *Id.* ¶¶ 28, 34.

[108] *Id.* ¶ 36.

Scott is not a party to the Pennsylvania Action "by reason of" his former corporate office because no express claim for breach of fiduciary duty has been raised against him.[109]

As to the second distinction identified by Defendants, although it is true that Scott Pontone was no longer an officer or director of Defendants when the alleged wrongful scheme to usurp their customers and employees for Batesville commenced, I find that the claims challenging Scott's participation in that scheme nonetheless arise by virtue of his former position as an officer and director of New Milso. This is so because the confidential and proprietary information that allegedly enabled and facilitated the wrongdoing was acquired by Scott during his tenure as an officer and director. Notably, the Pennsylvania Complaint specifically avers that the confidential and proprietary information acquired by Scott during his employment with Defendants and later allegedly misused by him remained valuable despite the passage of time:

> Consistent with the tightly-knit nature of the death care industry, . . . the confidential nature of information regarding [Plaintiffs'] customers—particularly with respect to key contact information and preferences—did not become stale merely because of the passage of time. Likewise, given the extensive continuity of the product mix in the casket industry, the confidential nature of information regarding matters such as product preferences and purchasing histories did not quickly become stale. Thus, much of the confidential and proprietary information to which Scott had access before his separation from Plaintiffs has retained its confidential and

---

[109] *See Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761 (Del. Ch. June 18, 2002) (rejecting defendant's argument that because it did not specifically allege that plaintiff had committed a breach of fiduciary duty in the underlying action, that action was not a proper subject of advancement).

proprietary status—and value to Plaintiffs—to the present day.[110]

For the foregoing reasons, I conclude that Scott, like his father, was made a party to the Pennsylvania Action "by reason of" his former role as a director or officer of New Milso. Therefore, under Section 2.15(b) of New Milso's bylaws, Scott is entitled to advancement for the expenses he incurs "in defending" that action.[111]

2.      **Is Scott entitled to advancement for his counterclaims in the Pennsylvania Action?**

Among other expenses, Scott seeks advancement for the litigation expenses he has incurred in connection with the counterclaims he has asserted in the Pennsylvania Action. Scott has asserted a number of counterclaims against the Pennsylvania Plaintiffs, all but two of which mirror counterclaims that also were asserted by Harry Pontone.[112] In Harry Pontone's advancement proceeding, I ruled on the issues pertaining to Harry's entitlement to advancement for his counterclaims in a Memorandum Opinion that addressed Defendants' exceptions to the Second Report of the Special Master appointed in that proceeding.[113] The parties agree that my ruling as to which of Harry's counterclaims are subject to advancement is controlling as to any corresponding counterclaims that have been asserted by Scott Pontone.[114] Therefore, I adopt that ruling for purposes of this case[115] and need not address those counterclaims further. The two counterclaims Scott has asserted that do not correspond to counterclaims asserted by

---

[110]      Compl. Ex. 1 ¶ 35.

[111]      Choa Aff. I Ex. 1 § 2.15(b).

54

Harry Pontone are Scott's counterclaims for defamation and for false and misleading advertising.

In *Citadel Holding Corp. v. Roven*,[116] the Delaware Supreme Court considered whether the "in defending" language in an advancement provision extended to the assertion of various counterclaims. Adopting a broad reading of the phrase "in defense" in the litigation context, the Court held that advancement was required for the compulsory counterclaims at issue in that case, because they were "necessarily part of the same dispute and were advanced to defeat, or offset" the affirmative claim.[117] Under the test articulated in *Roven*, and refined by subsequent case law,[118] a counterclaim will be

---

[112] Specifically, both Scott and Harry Pontone asserted against the Pennsylvania Plaintiffs counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with prospective business advantage, unjust enrichment, unfair competition, abuse of process, and declaratory judgment and injunctive relief on restrictive covenants. Choa Aff. in Supp. of Pl.'s Br. in Supp. of Mot. for Partial Summ. J. ("Choa Aff. II") Ex. 4.

[113] *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973 (Del. Ch. May 29, 2014).

[114] *See* Defs.' Answering Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. 8-9; Pl.'s Reply Br. in Further Supp. of His Mot. for Partial Summ. J. 20.

[115] Harry Pontone has moved for reargument on the Court's May 29, 2014 ruling, and that motion remains pending. Nothing in this Opinion is intended to reflect the Court's disposition as to the motion for reargument.

[116] 603 A.2d 818 (Del. 1992).

[117] *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992).

[118] *See, e.g.*, *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *35 (Del. Ch. May 23, 2008); *Reinhard & Kreinberg v. Dow Chem. Co.*, 2008 WL 868108, at *3 (Del. Ch. Mar. 28, 2008); *Gentile v. SinglePoint Fin., Inc.*, 787 A.2d 102, 109-10 (Del. Ch. 2001).

considered to be "defending" and thus advanceable, if it is: (1) "necessarily part of the same dispute," in the sense that it qualifies as a compulsory counterclaim under the prevailing Delaware and federal procedural standard, and (2) "advanced to defeat, or offset" the affirmative claims.[119]   Under Federal Rule of Civil Procedure 13 and its Delaware analog, a counterclaim is compulsory if it, among other requirements, "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."[120]

In light of the foregoing standard, I next consider whether Scott is entitled to receive advancement for his counterclaims for defamation and for false and misleading advertising.

### a.    Defamation

Scott has asserted a counterclaim for defamation against the Pennsylvania Plaintiffs, alleging that, on numerous occasions, they "knowingly caused false, misleading, and untrue statements to be made or published to customers and news outlets or agencies with the intent of defaming Scott Pontone."[121]  Among the specific examples provided in the counterclaim, Scott asserts that "on or about September 21, 2010, the Casket & Funeral Supply Association of America ("CFSA") published an email with a

---

[119]    *See Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at \*7 (Del. Ch. May 29, 2014); *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 399-400 (Del. Ch. 2009).

[120]    Fed. R. Civ. P. 13(a)(1); *accord* Del. Ct. Ch. R. 13(a).

[121]    Choa Aff. II Ex. 4 ¶ 259.

56

statement that CFSA had confirmed information regarding the instant lawsuit."[122]  He

further alleges that:

> The statement was made and confirmed, on information and belief, by Plaintiffs' directors, officers, agents, representatives, or employees. The statement that was published in the CFSA email and newsletter was false, untrue, misleading, and defamatory. Plaintiffs were aware that Scott Pontone's non-compete expired May 30, 2010, yet they nonetheless caused an untrue statement regarding the instant lawsuit to be published with reckless disregard for the truth and with the malicious intent of injuring, or otherwise causing harm and loss to Scott Pontone's trade, business, or profession.[123]

In *Duthie v. CorSolutions Medical, Inc.*,[124] this Court addressed whether the

plaintiffs in that action, whom the Court had found to be entitled to advancement in

defending underlying litigation brought by the defendants, were "entitled to advancement

of fees incurred in affirmatively asserting defamation claims against the Defendants

based on public statements which the Defendants have made about them regarding the

matters already in litigation."[125]  The Court held that:

> Where a party holding a right to advancement is the target of defamation by his adversary, the ability to "defend oneself" includes the capacity to respond to such attacks by filing defamation actions. Because the alleged defamatory attacks reprise the same charges as advanced in the litigation and because the adverse party has already brought litigation involving the same allegations, it is neither practicable nor

---

[122]  *Id.* ¶ 262.

[123]  *Id.* ¶ 263.

[124]  2008 WL 4173850 (Del. Ch. Sept. 10, 2008).

[125]  *Id.* at *1.

> reasonable to attempt to draw some line defining which defensive strategy, even though it may involve an assertion of affirmative claims, is appropriate.[126]

The Court concluded that the counterclaims for defamation in *Duthie* were a "necessary part of the same dispute" and awarded the plaintiffs advancement of their fees and expenses incurred in asserting those claims.

I consider the facts relevant to Scott's defamation counterclaim to be analogous to the facts surrounding the defamation counterclaims at issue in *Duthie*. As in *Duthie*, Scott's counterclaim alleges that Defendants committed defamation by, *inter alia*, spreading false statements echoing the very charges Defendants are advancing in the underlying litigation, including that Scott has acted in violation of the contractual obligations he owes to them. Consistent with the ruling in *Duthie*, therefore, I conclude that Scott's defamation counterclaim is compulsory and a "necessary part of the same dispute." Success on that counterclaim also would likely produce an offsetting damages award and negate any of the Pennsylvania Plaintiffs' contractual claims premised on Scott's non-competition obligations extending beyond May 30, 2010. Thus, I hold that Scott's defamation counterclaim was asserted "in defending" the underlying action, and that he is entitled to advancement from New Milso for his fees and expenses incurred in connection with that counterclaim.

---

[126]    *Id.*

58

### b.     False and misleading advertising

Scott also has asserted a counterclaim for false and misleading advertising against the Pennsylvania Plaintiffs. In that counterclaim, Scott alleges that the Pennsylvania Plaintiffs "engaged in acts of false, deceptive, and misleading advertising," by, among other things: giving false information about their headquarters, implying that Harry Pontone remained affiliated with the Company after he had resigned, implying that members of the Pontone family had leadership roles in the Matthews casket division when they did not, distributing caskets made by others as their own, and placing improper designations of origin on their products.[127] The counterclaim further alleges that "[c]onsumers have been confused by Plaintiffs false and misleading advertising" and that it has damaged Scott, PCC, and consumers.[128]

Having considered Scott's counterclaim for false and misleading advertising in relation to the affirmative claims asserted against him in the Pennsylvania Action, I conclude that his counterclaim is not sufficiently related to the affirmative claims to be considered compulsory or a "necessary part of the same dispute."

As previously noted, under Federal Rule of Civil Procedure 13(a) and its Delaware analog, a counterclaim is compulsory if it, among other requirements, "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."[129] The test used to determine whether a claim and counterclaim arise out of the same

---

[127]     Choa Aff. II Ex. 4 ¶ 294.

[128]     *Id.* ¶¶ 296-97.

[129]     Fed. R. Civ. P. 13(a)(1); *accord* Del. Ct. Ch. R. 13(a).

"transaction or occurrence" is whether the two bear a "logical relationship."[130] Whether two claims bear a logical relationship to one another may be informed by considerations such as whether they share issues of fact and law in common or would involve presentation of the same evidence.[131]

Scott argues that his counterclaim for false and misleading advertising is necessarily part of the same dispute as the affirmative claims because, if he proves that counterclaim, it will help to demonstrate that any reduction in New Milso's business is the result of its own poor business practices—in deceiving and confusing customers—rather than the result of any wrongful scheme by him. I find that argument insufficient to demonstrate a "logical relationship" for purposes of establishing that the counterclaim is compulsory.

The legal and factual issues implicated by the affirmative claims—including whether Scott breached his contractual duties to New Milso, tortiously interfered in New Milso's contractual relations, infringed on its trademark, engaged in unfair competition, or was unjustly enriched—are largely distinct from those implicated by a false and misleading advertising claim against New Milso. In that regard, I note that, in order to

---

[130]  *See Mott v. State*, 49 A.3d 1186, 1188–89 & n.8 (Del. 2012); *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at *9 (Del. Ch. May 29, 2014).

[131]  *See Mott*, 49 A.3d at 1188–89 & n.8; *Pontone*, 2014 WL 2439973, at *9; *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389–90 (3d Cir. 2002).

establish a false advertising claim under the Lanham Act,[132] upon which Scott has based his counterclaim,[133] a plaintiff must prove:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.[134]

At least the first four of those elements are wholly distinct from the elements at issue in the Pennsylvania Plaintiffs' affirmative claims. This lack of overlap also suggests that Scott's assertion of the false and misleading advertising claim in the Pennsylvania Action does not substantially promote judicial economy, a policy underlying Rule 13(a).[135]

For the foregoing reasons, I conclude that Scott's counterclaim for false and misleading advertising is not logically related to the affirmative claims in the Pennsylvania Action and, therefore, is not compulsory or a "necessary part of the same dispute." Assertion of that counterclaim, therefore, does not qualify as "defending" for purposes of New Milso's bylaws, and expenses incurred by Scott in connection with the counterclaim are not subject to advancement.

---

[132]      15 U.S.C. § 1125.

[133]      Choa Aff. II Ex. 14 at 24-25.

[134]      *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

[135]      *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389.

## D. Fees on Fees

Section 2.15(c) of New Milso's bylaws provides that, if New Milso does not timely pay a request for indemnification or advancement, the indemnitee may commence an "Indemnitee Action" to recover the unpaid amount and "if successful in whole or in part, the indemnitee shall also be entitled to be paid the expense of bringing and pursuing such Indemnitee Action."[136] Although a literal reading of New Milso's bylaw suggests that Scott is entitled to indemnification for all "fees on fees" related to this advancement action if he is even partially successful, this Court, under Section 145 of the DGCL, will "only award that amount of fees that is reasonable in relation to the results obtained."[137]

Determining an appropriate award of "fees on fees" based on the results obtained by a plaintiff in an advancement or indemnification action "is a nonscientific inquiry that simply involves a reasoned consideration of the issues at stake in the case and an assessment of the plaintiffs' level of success."[138] In this action, Scott has succeeded in establishing his entitlement to advancement for the fees and expenses he has incurred and will incur in the Pennsylvania Action that have not yet been paid by Batesville. The record indicates that the amount of those fees over time is likely to be substantial. On the other hand, Scott has failed to demonstrate that he is entitled to advancement for

---

[136] Choa Aff. I Ex. 1 § 2.15(c)

[137] *Schoon v. Troy Corp.*, 948 A.2d 1157, 1176 (Del. Ch. 2008) (quoting *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178, 185 (Del. Ch. 2003)) (internal quotation marks omitted).

[138] *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *39 (Del. Ch. May 23, 2008).

62

previously incurred fees and expenses that Batesville already has funded. Based on the level of Scott's success in this action, including on Defendants' motion to dismiss and his motion for partial summary judgment, I hold that he is entitled to 75% of the reasonable "fees on fees" that he has incurred in connection with this advancement proceeding.

### E.      Prejudgment Interest

"In Delaware, prejudgment interest is awarded as a matter of right."[139] A party from whom advancement is improperly withheld "is entitled to interest computed from the date of demand," defined as the date on which the party "specified the amount of reimbursement demanded and produced his written promise to pay."[140] Scott made an initial demand for advancement and provided an undertaking to New Milso on July 24, 2013 and has made additional monthly requests for advancement since that time, all of which New Milso has rejected.[141] Each of those requests specified the monetary amount of advancement requested. Thus, I hold that, as to any legal expenses Scott has incurred in the Pennsylvania Action since January 2013 that have not yet been paid by Batesville, Scott is entitled to receive prejudgment interest from New Milso at the legal rate running from July 24, 2013 or the date that advancement for such legal expenses was requested from New Milso, whichever is later. For future advancement requests from Scott, New

---

[139]      *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) (citing *Moskowitz v. Mayor & Council of Wilm.*, 391 A.2d 209 (Del. 1978)).

[140]      *Roven*, 603 A.2d at 826 & n.10.

[141]      Choa Aff. II Ex. 5-9, 20-21.

Milso shall have a commercially reasonable period of ten days to provide the requested advancement before prejudgment interest shall begin to accrue.

## IV.    CONCLUSION

For the reasons stated in this Opinion, I grant in part and deny in part Defendants' motion to dismiss for lack of standing. I grant that motion in that I hold Scott lacks standing to pursue advancement for legal expenses he has incurred in the Pennsylvania Action for which he already has received funding from Batesville. I deny the motion in that I hold Scott has standing to pursue advancement for legal expenses he has incurred and will incur in the Pennsylvania Action for which he has not received funding from Batesville.

I grant in part and deny in part Scott's motion for partial summary judgment. I grant that motion in that I hold Scott is entitled to receive advancement from New Milso for his expenses incurred in the Pennsylvania Action, subject to the limitations specified in this Opinion. I deny the motion in that there remains a genuine issue of material fact as to whether Scott is entitled to receive mandatory advancement from Defendant York. Finally, I award "fees on fees" and prejudgment interest as specified herein.

Counsel for Plaintiff shall circulate a proposed form of order implementing these rulings and file the proposed order within fifteen days of the date of this Opinion.[142] If the parties are unable to agree on the form of order, they shall file their respective

---

[142]    The Court will hold a telephone conference with counsel on August 27, 2014 at 11:00 a.m. to discuss certain preliminary matters regarding the form of order.

proposal with a supporting letter of not more than five pages in length within fifteen days

of this Opinion.