# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

WILLIAM HORNE,                          :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :        **C.A. No. 12268-VCS**
                                        :
OPTIMISCORP, a Delaware corporation,    :
                                        :
            Defendant.                  :

## MEMORANDUM OPINION

Date Submitted:  February 16, 2017
Date Decided:  March 3, 2017

Bruce E. Jameson, Esquire and Eric J. Juray, Esquire of Prickett, Jones & Elliott, P.A., Wilmington, Delaware, Attorneys for Plaintiff.

John G. Harris, Esquire of Berger Harris LLP, Wilmington, Attorney for Defendant.

**SLIGHTS, Vice Chancellor**

Plaintiff William Horne ("Horne") is a former officer of Defendant OptimisCorp (or the "Company"). He has initiated this action pursuant to 8 *Del. C.* § 145(c) to recover indemnification for (1) all fees and expenses he incurred for the successful defense of the case captioned *OptimisCorp v. Waite*, C.A. No. 8773-VCP (Del. Ch.)[1] and (2) his fees on fees and expenses incurred in the prosecution of this action.

OptimisCorp, along with its controlling stockholder, Alan Morelli ("Morelli"), filed the underlying action against several defendants, including Horne, and alleged various claims relating to the decision of the Company's Board of Directors (the "Board") to remove Morelli as CEO of the Company. The litigation was intense and featured active pre-trial motion practice, including discovery-related and case dispositive motions. The discovery was likewise extensive, including over thirty depositions. The case was tried over six days in February 2015. The court's 213-page Trial Opinion determined that plaintiffs had failed to prove any of their claims against Horne and entered judgment in his favor. The Supreme Court affirmed by order dated April 25, 2016.[2]

---

[1] *See OptimisCorp v. Waite*, 2015 WL 5147038, at *2 (Del. Ch. Aug. 26, 2015) (decision after trial, hereinafter the "Trial Opinion").

[2] Transmittal Aff. of Eric J. Juray in Supp. of Pl. William Horne's Opening Br. in Supp. of his Mot. for Summ. J. ("Juray Aff.") Ex. D.

1

The Company opposes Horne's demand for indemnification.  Specifically, the Company contends that certain of the claims in the underlying litigation did not arise by reason of Horne's service as an officer of the Company and also that certain of the fees charged by Horne's counsel are unreasonable.  Horne disagrees and seeks summary judgment on his claims for: (i) fees and expenses incurred in successfully defending the underlying litigation, (ii) fees and expenses incurred prosecuting this action, and (iii) pre- and post-judgment interest on all amounts.  For the reasons that follow, the motion is GRANTED.

## I.  BACKGROUND

### A. The Parties

OptimisCorp is a privately held Delaware corporation with its principal place of business in Pacific Palisades, California.[3]  It provides physical therapy services and develops software to support physical therapy practices.[4]  Horne became OptimisCorp's CFO in 2008.[5]  He was terminated as CFO on May 13, 2013.[6]  Horne

---

[3] Def. OptimisCorp's Answer and Affirmative Defenses to Pl.'s Verified Compl. for Indemnification ("Answer") ¶ 3.

[4] *OptimisCorp*, 2015 WL 5147038, at *1.

[5] Answer ¶¶ 1–2.

[6] Answer ¶ 2.

owns 167,668 shares of the Company's stock, or less than 1% of the outstanding shares.[7]

## B. The Underlying Litigation

The three plaintiffs in the underlying litigation were OptimisCorp, Morelli and Analog Ventures, LLC, a California LLC managed by Morelli that holds many of his OptimisCorp shares (collectively the "Morelli Plaintiffs").[8] With the exception of a brief period from October 20, 2012 through March 21, 2013, Morelli has always been the Company's CEO and Chairman of its Board of Directors.[9] Morelli "claim[ed] to be the victim of a vast conspiracy that undermined his authority and attempted to seize control of OptimisCorp from him."[10] The other defendants in the underlying litigation were John Waite ("Waite"), William Atkins ("Atkins") and Gregory Smith ("Smith") (collectively the "Director Defendants"). The Director Defendants jointly owned a physical therapy company known as Rancho Physical Therapy, Inc. ("Rancho"), which they sold to OptimisCorp in an

---

[7] *OptimisCorp*, 2015 WL 5147038, at *3.

[8] *Id.* at *2.

[9] *Id.* at *2, *26. The Court in the Trial Opinion noted that even during the period from October 20, 2012 through March 21, 2013, Morelli's status as CEO was merely "uncertain." *Id.* at *2.

[10] *Id.* at *26.

all-stock transaction in 2007.[11]   Horne has never been an officer, director or employee of Rancho.

The sordid factual background that gave rise to the underlying litigation was described in considerable detail in the Trial Opinion.  My focus here is on the facts necessary to inform the indemnification analysis.  In September 2012, a Company employee reported to Waite that she and Morelli had engaged in a sexual relationship over a period of time and that she believed Morelli had sexually harassed her.[12]  This report prompted a series of responses from Horne and the Director Defendants that ultimately led to Morelli's removal as CEO.  In the underlying litigation, Morelli contended that the defendants had been looking to remove him for years and that the reported sexual misconduct with an employee was merely a pretext to allow the defendants to seize to control of the Company.[13]  He alleged that the defendants bribed and coaxed the female employee to make a false claim of sexual harassment as the first step of their plan and then initiated a bogus investigation of the report to provide cover for the challenge they knew would follow his removal as CEO.[14]

---

[11] *Id.* at *3.

[12] *Id.* at *41.

[13] *Id.* at *52 n.466.

[14] *Id.* at *41.

4

In the Trial Opinion, the Court summarized Horne's very limited involvement in the sexual harassment investigation and subsequent attempt to remove Morelli as CEO. In essence, Horne gave statements to lawyers charged with leading the investigation and pointed out to the lawyers that a stockholders agreement would have to be amended if the Board decided to remove Morelli in order to prevent Morelli from simply replacing the majority of directors as controlling stockholder and then reinstating himself as CEO.[15] When the Board met to consider Morelli's removal, Horne was not present and did not otherwise participate.[16]

The Board removed Morelli as CEO on October 20, 2012. He soon after initiated an action pursuant to 8 *Del. C.* § 225 seeking a declaration that he was invalidly removed.[17] That action settled on March 21, 2013, with Morelli being restored as CEO.[18] Horne was terminated shortly thereafter on May 10, 2013.[19]

The underlying litigation was initiated on August 5, 2013. As noted, the complaint (the "Morelli Complaint") alleged in seven counts that Horne and the

---

[15] *Id.* at *80. By virtue of a stockholders agreement, Morelli had the right to designate five of the nine directors, and therefore controlled the Board and the Company. *Id.* at *52 n.466.

[16] *Id.* at *73.

[17] *Id.*

[18] *Id.* at *53.

[19] *Id.*

Director Defendants (and many others) bribed the female employee to make a false claim of sexual harassment as a pretext to remove Morelli as CEO:[20]

- Counts 1 and 2 alleged that Horne breached his fiduciary duties to the Company, with one count seeking injunctive relief and the other damages;

- Counts 3 and 4 alleged that Horne breached the stockholders agreement in undefined ways, with one count seeking injunctive relief and the other damages;

- Counts 5 and 6 alleged that Horne tortiously interfered with unidentified "third parties, including the Company's existing and prospective employees, consultants, vendors, business partners and financing sources," with one count seeking injunctive relief and the other damages.[21]

The parties dispute whether Count 7 purported to state a claim against Horne, but it is clear that the allegations there are directed only against the "Rancho Defendants" which the Morelli Complaint (at ¶ 2) defines not to include Horne.

---

[20] Juray Aff. Ex. A (Morelli Complaint) at ¶¶ 18, 20.

[21] *Id.* at ¶¶ 38–58.

While the Morelli Complaint named Horne in several counts, the claims actually presented against Horne during the six-day trial were much more limited.[22] Indeed, the trial court recounted how the Plaintiffs had either abandoned or waived nine of the claims they alleged in the Morelli Complaint.[23] As to Horne, the court noted that the primary claim prosecuted against him at trial was that he aided and abetted the Director Defendants in their alleged breaches of fiduciary duty.[24] The Trial Opinion characterized the Plaintiffs' claims as "a shifting target and impossible to defend against without enormous expense"[25] and rejected each claim against

---

[22] While not expedited, the litigation schedule was tightly managed by the court and relatively compressed. As noted, the discovery and motion practice was extensive. *See e.g. OptimisCorp v. Waite*, C.A. No. 8773-VCP, at 23, 75 (Del. Ch. Aug. 16, 2013) (TRANSCRIPT); *OptimisCorp v. Waite*, 2015 WL 357675, at *3 (Del. Ch. Jan. 28, 2015); *OptimisCorp*, 2015 WL 5147038, at *21.

[23] *OptimisCorp*, 2015 WL 5147038, at *55.

[24] *Id.*

[25] *OptimisCorp*, 2015 WL 5147038, at *55. The Trial Opinion also noted disturbing conduct on the part of Morelli that threatened the integrity of the trial process and consumed much time and expense during the litigation, including witness tampering and procuring false testimony. *Id.* at *8–20, n.146.

Horne out of hand.[26]  The Supreme Court affirmed by Order dated April 25, 2016, noting that the litigation involved "complicated and unusual facts."[27]

## C. Procedural History

Horne filed his Verified Complaint for advancement and indemnification on April 27, 2016.  He filed the motion for summary judgment *sub judice* on August 17, 2016.  In his motion, Horne seeks a declaration that he is entitled to mandatory indemnification for all fees and expenses he incurred in the underlying litigation and for "fees on fees" incurred in his prosecution of this action.  Defendant opposes the motion on limited grounds, meaning it acknowledges that Horne is entitled to some indemnification but not all that he seeks in this action.  First, Defendant contends that Horne was not sued in all respects in the underlying action by reason of the fact that he was an officer of OptimisCorp.  Second, it argues that some of the fees incurred by Horne in the underlying litigation were for work performed in advancing positions that benefited other defendants who do not have indemnification rights. Finally, it contends that it is entitled to discovery to allow it to challenge whether

---

[26] The Trial Opinion addressed each claim against Horne *seriatim*, including conspiracy, *Id.* at *57–59; breach of fiduciary duty, *Id.* at *63, 71; breach of contract, *Id.* at *73 (indicating that the breach of contract theory was "unexplained by Plaintiffs"); tortious interference, *Id.* at *77; and aiding and abetting, *Id.* at *80.

[27] *OptimisCorp v. Waite*, 2016 WL 2585871, at *1 (Del. 2016).

8

Plaintiff's counsel fees are reasonable.  In reply, Horne argues that Defendant has avoided its mandatory indemnification obligations long enough and that he is entitled to full indemnification for every penny he seeks.  I agree.

## II.  LEGAL ANALYSIS

### A. Summary Judgment and Indemnification

"A ruling on indemnification is . . . appropriate at the summary judgment stage where there are no material factual disputes germane to indemnification and the moving party is entitled to judgment as a matter of law."[28]  "The party opposing summary judgment . . . may not rest upon the mere allegations or denials contained in its pleadings, but must offer, by affidavit or other admissible evidence, specific facts showing that there is a genuine issue for trial."[29]  This burden upon the party opposing summary judgment is particularly appropriate when a non-moving defendant is resisting a claim for mandatory indemnification under 8 *Del. C.* § 145(c) because the ultimate burden of proof is on the defendant corporation to prove that the indemnitee is not entitled to indemnification.[30]

---

[28] *Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *1 (Del. Ch. Jan. 8, 2010); *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *2 (Del. Ch. May 3, 2002).

[29] *Jackson Walker L.L.P. v. Spira Footwear, Inc.*, 2008 WL 2487256, at *3 (Del. Ch. June 23, 2008).

[30] *Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *13 (Del. Ch. July 14, 2009) (citing *VonFeldt v. Stifel Fin. Corp.*, 1999 WL 413393, at *3 (Del. Ch. June 11, 1999)) ("Although a plaintiff generally bears the burden of pleading all elements of her claim, in the case of a mandatory indemnification provision, the burden rests on the party

Under 8 *Del. C.* § 145(c):

> To the extent that a <u>present or former director or officer</u> of a corporation <u>has been successful on the merits or otherwise</u> in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person <u>shall be indemnified</u> against <u>expenses (including attorneys' fees) actually and reasonably incurred</u> by such person in connection therewith. (Emphasis added).

In determining whether Horne is entitled to mandatory indemnification under § 145(c), the Court's focus is narrowly upon the *outcome* of the underlying action; it is neither fair nor efficient for the Court to facilitate prolonged and expensive discovery into the facts of the underlying litigation or to revisit the reasons for the results achieved there.[31]  Having said this, the reference in § 145(c) to §§ 145 (a) and

---

from whom indemnification is sought to prove that indemnification is not required."); *O'Brien v. IAC/Interactive Corp.*, 2010 WL 3385798, at *5 (Del. Ch. Aug. 27, 2010), *aff'd*, 26 A.3d 174 (Del. 2011) ("When dealing with a mandatory indemnification provision such as the one here, 'the burden rests on the party from whom indemnification is sought to prove that indemnification is not required.' The party seeking indemnification, however, must prove that the amount of indemnification sought is reasonable.") (internal citations omitted).

[31] *See Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1107–08 (Del. Ch. 2012); *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998) (holding that courts interpreting Delaware's indemnification statute should "eschew [a] narrow construction of the statute" that fails to promote the policy of encouraging qualified men and women to serve corporations without fear of ruinous legal fees); *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *7 (Del. Ch. Jan. 23, 2006) (holding that courts should interpret "indemnification contracts to provide coverage when that is reasonable"); *Blankenship v. Alpha Appalachia Hldgs., Inc.,* 2015 WL 3408255, at *17 (Del. Ch. May 28, 2015) (holding that where any uncertainty exists, the Court should grant indemnification because "the public policy of Delaware . . . supports resolving ambiguity in favor of indemnification.").

(b) makes clear that, as a threshold matter, the Court must inquire into whether Horne was sued "by reason of the fact that [he] is or was a director [or] officer [of OptimisCorp]. . . ." The Court must then review the outcome of the underlying litigation in a general sense to determine if Horne was successful there. Finally, the Court must review the fees and expenses for which he is seeking indemnification to confirm that the amounts are reasonable.[32]

**B. Horne Defended Claims Brought Against Him By Reason of the Fact That He Was an Officer of OptimisCorp**

The "by reason of the fact" standard, stated in §§ 145(a) and (b), and incorporated by reference in § 145(c), "is interpreted broadly and in favor of indemnification and advancement."[33] "[I]f there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct."[34] The claims asserted against Horne in the underlying litigation easily meet this standard.

---

[32] *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993).

[33] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050-51 (Del. Ch. 2014) (internal citations omitted).

[34] *Id.*

Little analysis is required to conclude that the breach of fiduciary duty claims asserted against Horne relate to his service as an officer of OptimisCorp. Any fiduciary duty Horne owed to the company arose from his position as CFO. The two breach of fiduciary duty claims tried against Horne were that he (1) undermined the Company's strategic plan and (2) attempted to gain control of OptimisCorp by ambush.[35] Horne was successful in his defense of those claims and is entitled to indemnification.

The Morelli Plaintiffs also alleged that Horne, while CFO, acted in concert with the Director Defendants improperly to remove Morelli as CEO under false pretenses.[36] They styled this claim as conspiracy or, alternatively, aiding and abetting breaches of fiduciary duty. These claims, as pled and as prosecuted, clearly arose by reason of Horne's position as CFO. The trial court dismissed the conspiracy claim as a sanction for the Morelli Plaintiffs' litigation misconduct.[37] In the alternative, the court held that the claim failed either because it was not viable as a matter of law or because the plaintiffs failed to meet their burden of proof.[38] In

---

[35] *OptimisCorp*, 2015 WL 5147038, at *59.

[36] *Id.* at *58.

[37] *Id.* at *20–21.

[38] *Id.* at *57–59.

any event, Horne was successful in his defense of the claim and is entitled to indemnification.

The aiding and abetting claim was also premised on the alleged concerted effort among officers and directors to oust Morelli as CEO.[39] The trial court made it clear that these claims, as related to Horne, arose from his conduct as CFO[40]; indeed, in at least one respect, the trial Court held that Horne's conduct giving rise to the aiding and abetting claim was *consistent with* his fiduciary duties.[41] I need not parse through the claims in any more detail than this; Horne clearly is entitled to mandatory indemnification for his successful defense of the non-contract claims asserted against him.[42]

In addition to fiduciary duty, aiding abetting and conspiracy claims, the Morelli Plaintiffs also asserted breach of contract claims against Horne arising from

---

[39] "[T]he test for stating an aiding and abetting claim is a stringent one, turning on proof of scienter—a plaintiff must prove: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) knowing participation in that breach by the non-fiduciary." *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1039 (Del. Ch. 2006).

[40] *OptimisCorp,* 2015 WL 5147038, at *80.

[41] *Id.*

[42] *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *24 (Del. Ch. May 23, 2008) ("In that regard, I find no reason to pick apart the case and only award partial indemnification. The [complaint] pled that the [indemnitees] were at the center of a wide-ranging conspiracy to injure [the controlling stockholder and his company]. . . .").

alleged breaches of a stockholders agreement to which Horne was a party.[43]   But the theories of liability actually prosecuted against Horne were very much "moving targets,"[44] and ultimately the trial court was left to observe with respect to the breach of contract claim that "[h]ow [Horne] breached the Stockholders Agreement [was] unexplained by Plaintiffs."[45]   Moreover, even if the Morelli Plaintiffs had actually prosecuted their breach of contract claim against Horne, I would still conclude that the claim fell within the "by reason of the fact" standard because the alleged breach of contract—Horne's advising the Company's counsel that the removal of Morelli as CEO would require an amendment to the stockholders agreement—was determined by the trial court to be an act taken in compliance with Horne's fiduciary duties as an officer of the Company.[46]   Horne was successful in his defense of the claim because the Morelli Plaintiffs chose not to prosecute it against him.[47]   He is entitled to indemnification.

---

[43] *OptimisCorp*, 2015 WL 5147038, at *73.

[44] *Id.* at *55.

[45] *Id.* at *73.

[46] *Id.* at *80.

[47] Similarly, there is no indication the claims that Horne breached the implied covenant of good faith and fair dealing, tortiously interfered with contract or engaged in actionable wrongdoing after he left OptimisCorp were ever meaningfully developed in discovery or prosecuted at trial. *Id.* at *75–77. There can be no argument, therefore, that Horne is not entitled to indemnification with respect to his defense of these claims.

## C. Horne's Fees Are Reasonable

When determining whether fees are reasonable under Section 145(c), the court considers whether: (1) the expenses were actually paid or incurred, (2) the services were in good faith thought prudent and appropriate by competent counsel, and (3) the rates or charges were comparable to those charged in similar circumstances.[48] The Company does not dispute that Horne incurred fees. Nor does the Company challenge the rates charged by Horne's counsel. Instead, the Company challenges certain strategic decisions made by Horne's counsel during the underlying litigation, including the decision to rely upon a witness declaration that was later deemed to be unreliable and the decision to depose a witness who Defendant alleges did not provide relevant testimony, both of which Defendant alleges "were the product of meritless litigation strategies that Horne abandoned prior to trial, but not before racking up considerable expense."[49] The Company's invitation to nitpick counsel's strategic decisions in this hotly litigated case where Horne ultimately prevailed on every claim is offered with little grace.

---

[48] *O'Brien*, 2010 WL 3385798, at *5 (citing *Delphi Easter P'rs*, 1993 WL 328079, at *9).

[49] Def.'s Answering Br. 31.

This court will review litigation strategy decisions only if they are "unmistakably unreasonable" and constitute "clear abuse."[50] The Company has fallen well short of making this showing. Nor has the Company justified its requests for discovery into the fees or that the Court engage in a line-by-line review of counsel's bill.[51] Given the complexity of the issues, the duration and scope of discovery, the extensive pre-trial motion practice and the lengths to which Horne was forced to go to defend himself—a trial and post-trial appeal—it is clear that the requested fees are reasonable on their face.

Finally, I reject the Company's contention that Horne's counsel engaged in work for the benefit of other defendants. While it is true that some of the work undertaken by Horne's counsel ultimately did benefit all defendants,[52] that work was

---

[50] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, *16 n.42 (Del. Ch. Jan. 23, 2006). *See also Salaman v. Nat'l Media Corp.*, 1994 WL 465535, at *3 (Del. Super. Ct. July 22, 1994) ("Furthermore, Delaware Courts do not second-guess counsel's judgment on tactical decisions, even when, in retrospect, their decisions prove to have been incorrect.").

[51] *Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at *8–9 (Del. Ch. Aug. 5, 2003) (rejecting alleged requirement of line-item review); *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010) (determining the reasonableness of amounts sought "does not require that this Court examine individually each time entry and disbursement").

[52] *OptimisCorp*, 2015 WL 5147038, at *3.

not performed for the purpose of benefiting other defendants and no other defendant was billed for any work performed by Horne's counsel.[53]

## III. CONCLUSION

Based on the foregoing, I am satisfied that Horne is entitled to summary judgment in his favor for: (1) legal fees and expenses incurred in the underlying litigation in the amount of $1,797,820.22; (2) the legal fees and expenses he has incurred in connection with the prosecution of this indemnification action;[54] and (3) prejudgment and post-judgment (simple) interest at the legal rate.[55]

**IT IS SO ORDERED.**

---

[53] *See* Aff. of Bruce E. Jameson in Supp. of Pl. William Horne's Mot. for Summ. J. ¶¶ 2, 5.

[54] Counsel shall submit an affidavit with a billing statement setting forth the amount of "fees on fees" sought by Horne along with a conforming final judgment, with notice as to form, within 20 days. "Unless [defense] counsel [] produces their own billing records in full in support of an argument the [Plaintiff's] bills are too high, I shall consider the amount sought [by Horne for "fees on fees"] to be reasonable. In objecting to the fee, [the Company] and [its] counsel should remember that it is more time-consuming to clean up the pizza thrown at a wall than it is to throw it." *Auriga Capital Corp. v. Gatz Props., LLC*, 40 A.3d 839, 882 (Del. Ch. 2012).

[55] *Sr. Hous. Capital, LLC v. SHP Sr. Hous. Fund, LLC*, 2013 WL 1955012, at *44 n.393 (Del. Ch. May 13, 2013).